IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAMOND D. HERRINGTON,           )     CASE NO. 5:12-cv-01005
                                )
             Petitioner,        )     JUDGE LESLEY WELLS
                                )
        v.                      )     MAGISTRATE JUDGE
                                )     KATHLEEN B. BURKE
TERRY TIBBALS,                  )
Warden,                         )
                                )
                                )     **REPORT & RECOMMENDATION**
                                )
             Respondent.        )

Petitioner Damond D. Herrington ("Petitioner" or "Herrington"), acting *pro se*, filed this habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition").[1] Doc. 1.  Respondent filed a Return of Writ.  Doc. 7.  Herrington filed a Traverse.[2] Doc. 16.

Herrington challenges the constitutionality of his conviction and sentence in *State v. Herrington*, Case No. CR-2008-06-2074(A) (Summit County).  Doc. 1.   A Summit County Court of Common Pleas jury found Herrington guilty of attempted murder (Count One), aggravated robbery (Counts Two and Three), kidnapping (Count Four), felonious assault (Count Five), having weapons while under disability (Count Six), and resisting arrest (Count Seven).[3]

---

[1] Prior to Respondent's filing of a Return of Writ, Herrington filed a Supplement to his Petition submitting two exhibits (Attachment A, Exhibit 3 (Doc. 4-1, pp. 1-2) and Attachment H, Exhibit 3 (Doc. 4-1, pp. 3-18) that he had not been able to submit when his petition was initially filed.  Doc. 4.  He also submitted pages four and five of his petition (Doc. 4, pp. 3-4) that had not been included when his petition was initially filed.  Doc. 4.  *See also* Doc. 1, 3. Page number references refer to the page number for the cited ECF Doc.

[2] Herrington attached various exhibits to his Petition and Traverse.

[3] The guilty verdicts with respect to Counts One through Five included firearm specifications.  Doc. 7-2, pp. 19-21, 24.  Also, the Court found Herrington guilty of the repeat violent offender specifications included in Counts One through Five.  Doc. 7-2, pp. 21, 24.

Doc. 7-2, p. 24, Doc. 7-13, p. 93.  The trial court sentenced Herrington to a total of 30 years

incarceration.  Doc. 7-2, pp. 24-25, Doc. 7-13, pp. 93-94.

This matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 72.2.  For the reasons set forth below, the undersigned

recommends that the Court **DENY in part** and **DISMISS in part** Herrington's Petition.[4]

## I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  The petitioner has the

burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

*see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).

The Ohio Court of Appeals summarized the facts underlying Herrington's conviction as follows:

> {¶ 2} This case stems from an incident which occurred on June 19, 2008, at the
> home of Herrington and his mother, Minnie Herrington, located at 418 East
> Crozier Street in Akron, Ohio. Officer Ronald Kennedy of the Akron Police
> Department responded to the residence after dispatch received a call from a
> female who indicated that the father of her child had thrown her keys on a
> neighbor's roof. The woman who made the call was Kristi Milano, with whom
> Herrington had a daughter. Officer Kennedy entered the home and attempted to
> question Herrington about a possible domestic incident. The exchange between
> Officer Kennedy and Herrington escalated into a violent confrontation in which,
> after a struggle, Herrington ended up in possession of Officer Kennedy's gun.
> Officer Ronald Garey arrived on the scene moments later and he, along with
> Officer Kennedy, were able to subdue Herrington. The testimony at trial indicated
> that there were several other people in the house during the course of the incident.

Doc. 7-13, pp. 163-164  (Ninth District Ohio Court of Appeals' Decision and Journal Entry,

December 29, 2010, Case No. 25150 (Doc. 7-13, pp. 163-184)); *See also State v. Herrington*,

2010 WL 5548620, * 1 (Ohio App. Dec. 29, 2010).[5]

---

[4] The undersigned recommends dismissal of the grounds in the petition that are procedurally defaulted and denial of
the grounds in the petition that on review are without merit.

## II.      Procedural Background

### A.      State Conviction and Sentencing

On July 3, 2008, the Summit County Grand Jury indicted Herrington on seven counts –
Count One – attempted murder in violation of O.R.C. § 2923.02/2903.02(A)/(B), with firearm
and repeat violent offender specifications; Count Two - aggravated robbery in violation of
O.R.C. § 2911.01(B)(1)/(B)(2), with firearm and repeat violent offender specifications; Count
Three – aggravated robbery in violation of O.R.C. § 2911.01(A)(3), with firearm and repeat
violent offender specifications; Count Four – kidnapping in violation of O.R.C § 2905.01(A)(3),
with firearm and repeat violent offender specifications; Count Five – felonious assault in
violation of O.R.C. § 2903.11(A)(2), with firearm and repeat violent offender specification;
Count Six – having weapons under disability in violation of O.R.C. § 2923.13(A)(2); and Count
Seven – resisting arrest in violation of O.R.C. § 2921.33(C).  Doc. 7-2, pp. 19-22.  Herrington
pled not guilty.  Doc. 7-2, p. 18.  On January 12, 2009, the jury trial commenced.  Doc. 7-2, p.
16, Doc. 7-3, p. 7.   On January 20, 2009, the jury returned guilty verdicts on Counts One
through Seven, with firearm specifications associated with Counts One through Five.  Doc. 7-2,
pp. 14-15, 24.  The court found Herrington guilty of the repeat violent offender specifications
associated with Counts One through Five.  Doc. 7-2, p. 24.  On January 28, 2009,[6] the trial court
sentenced Herrington to a total of 30 years incarceration.[7]  Doc. 7-2, pp. 14, 24-25.

### B.      Direct appeal proceedings

#### 1.   Direct appeal from original sentencing

---

[5] The facts summarized herein are taken from *State v. Herrington*, 2010 WL 5548620, * 1 (Ohio App. Dec. 29,
2010).

[6] The sentencing journal entry was filed on January 30, 2009.  Doc. 7-2, p. 24.

[7] As discussed below, following a remand by the state appellate court, the trial court resentenced Herrington on
November 18, 2009.  Doc. 7-13, pp. 93-94

On February 27, 2009, Herrington, through counsel, filed a notice of appeal with the Ninth District Court of Appeals (COA 24647).  Doc. 7-2, p. 14, Doc. 7-13, p. 7.  In his appellate brief (Doc. 7-13, pp. 8-35), Herrington presented two assignments of error:

1.      Appellant was denied his Sixth Amendment Constitutional right to the effective assistance of counsel.[8]

2.      The trial court committed plain error in 1) allowing Herrington to represent himself at trial without fully informing appellant of all the required factors to determine a knowing, voluntary and intelligent waiver of counsel; 2) then in allowing Herrington's original defense counsel to resume representation rather than declare a mistrial; and 3) failing to sua sponte instruct the jury on Herrington's asserted self-defense.

Doc. 7-13, pp. 23-31.

On July 22, 2009, the State filed a motion to vacate sentence and dismiss the appeal arguing that the post-control provisions in the original sentencing entry were deficient, which rendered the sentencing judgment void and required a resentencing.  Doc. 7-13, pp. 36-39.   On August 4, 2009, Herrington, through counsel, opposed the State's motion.  Doc. 7-13, pp. 40-42.  Also, on August 4, 2009, the State filed its appellate brief.  Doc. 7-13, pp. 2, 43-92.  On September 3, 2009, the Ninth District Court of Appeals found that the trial court's journal entry did not properly notify Herrington of post-release control.  Doc. 7-13, pp. 1-2.   The Ninth District Court of Appeals vacated the sentence and remanded the matter to the trial court for resentencing.  Doc. 7-13, p. 2.

**2.  Resentencing**

On November 18, 2009,[9] the trial court resentenced Herrington.  Doc. 7-12, Doc. 7-13, pp. 93-94.   The trial court again sentenced Herrington to a total of 30 years incarceration.  Doc.

---

[8] The issues presented in connection with Herrington's first assignment of error were whether defense counsel rendered ineffective assistance in: (1) failing to request a jury instruction on self-defense; (2) failing to object to testimony bolstering the credibility of the alleged victim; and (3) conceding the guilt of the defendant on two felony counts (Aggravated Robbery against a peace officer and Having a Weapon Under Disability).  Doc. 7-13, pp. 10, 23-26.

7-13, pp. 93-94. With respect to post-release control, the trial court ordered that "[u]pon release from prison, the Defendant is ordered to serve a mandatory Five (5) year period of post-release control, according to O.R.C. 2967.28(B). If the Defendant violates the conditions of post-release control, he will be subject to an additional prison term of up to one-half of the stated prison term as determined by the Parole Board, pursuant to law." Doc. 7-13, p.94.

### 3. Direct appeal from resentencing

On December 23, 2009, Herrington, through counsel, filed a notice of appeal with the Ninth District Court of Appeals (COA 25150). Doc. 7-2, p. 12, Doc. 7-13, pp. 98. On March 22, 2010, Herrington filed his appellate brief (Doc. 7-13, pp. 99-125) in which he presented two assignments of error:

1. Appellant was denied his Sixth Amendment Constitutional right to the effective assistance of counsel.[10]

2. The trial court committed plain error in 1) allowing Herrington to represent himself at trial without fully informing appellant of all the required factors to determine a knowing, voluntary and intelligent waiver of counsel; 2) then in allowing Herrington's original defense counsel to resume representation rather than declare a mistrial; and 3) failing to sua sponte instruct the jury on Herrington's asserted self-defense.

Doc. 7-13, pp. 101, 114-122. On April 23, 2010, the State filed its brief. Doc. 7-13, pp. 126-162. On December 29, 2010, the Ninth District Court of Appeals issued its Decision and Journal Entry affirming the trial court's judgment. Doc. 7-13, pp. 163-184.

Herrington, acting *pro se*, filed a notice of appeal with the Ohio Supreme Court from the Ninth District Court of Appeal's December 29, 2010, judgment (Doc. 7-13, pp. 185-188) along

---

[9] The resentencing journal entry was filed on November 24, 2009. Doc. 7-13, p. 93.

[10] The issues Herrington presented in his first assignment of error were the same as those presented in his first appeal and summarized in note 8 above. Doc. 7-13, pp. 101, 114-122.

with a Memorandum in Support of Jurisdiction (Doc. 7-13, pp. 189-233).  In his Memorandum

in Support of Jurisdiction, Herrington presented the following seven propositions of law:

1.  Appellant was denied his Sixth Amendment Constitutional right to the effective assistance of counsel.[11]

2.  The trial court committed plain error in 1) allowing Herrington to represent himself at trial without fully informing appellant of all the required factors to determine a knowing, voluntary and intelligent waiver of counsel; 2) then in allowing Herrington's original defense counsel to resume representation rather than declare a mistrial; and 3) failing to sua sponte instruct the jury on Herrington's asserted self-defense.

3.  Appellant counsel was ineffective for failure to address that the trial court errored by failing to merge appellant's convictions of aggravated robbery and kidnapping.

4.  Appellant counsel was ineffective for failure to address that the trial court committed a violation of due process and equal protection rights guaranteed by the U.S. Constitution and the Ohio Constitution by failing to comply with R.C. § 2941.25.

5.  Appellant counsel was ineffective for failure to address that the trial court committed plain error for failing to instruct prosecution to elect which aggravated robbery it will pursue.

6.  Appellant counsel was ineffective for failure to address a claim of manifest weight of evidence.

7.  Appellant counsel was ineffective for failure to address the claim of illegal search and seizure, a violation of the U.S. Constitutional Fourth Amendment and Section 14, Article I of the Ohio Constitution.

Doc. 7-13, pp. 196-211.

On February 22, 2011, the State filed a Waiver of Memorandum in Response.  Doc. 7-13,

p. 234.  On April 20, 2011, the Ohio Supreme Court denied leave to appeal and dismissed

Herrington's appeal as not involving any substantial constitutional question.  Doc. 7-13, p. 235.

---

[11] The issues presented in connection with Herrington's first proposition of law were whether defense counsel rendered ineffective assistance in: (1) failing to request a jury instruction on self-defense; (2) failing to object to testimony elicited by the State from another police officer; and (3) conceding the guilt of the defendant on the charges of Aggravated Robbery against a peace officer and Having a Weapon Under Disability.  Doc. 7-13, pp. 196-198.

### 4.  App. R. 26(B) application for reopening

While his notice of appeal was pending with the Ohio Supreme Court, in March 2011,

Herrington, acting *pro se*, filed an application for reopening his direct appeal pursuant to App. R.

26(B).  Doc. 7-13, pp. 236-255.   In his App. R. 26(B) application, Herrington asserted five

proposed assignments of error.  Doc. 7-13, pp. 239-249.  The five proposed assignments of error

generally mirrored propositions of law three through seven raised by Herrington in his

Memorandum in Support of Jurisdiction filed with the Ohio Supreme Court.[12]  Doc. 7-13, pp.

239-249 *compare with* Doc. 7-13, pp. 196-211.

On March 9, 2011, the State filed a Memorandum in Opposition requesting that the Ninth

District Court of Appeals deny Herrington's application because there was no sworn statement as

required by App. R. 26(B)(2)(d).  Doc. 7-13, pp. 256-257.  On March 25, 2011, Herrington filed

a Motion in Response to Prosecution's Memorandum in Opposition arguing that he had

submitted a notarized Affidavit and believed that it satisfied the requirements of App. R.

26(B)(2)(d).  Doc. 7-13, pp. 258-263.  He also submitted a new notarized Affidavit (Doc. 7-13,

pp. 259-260) and requested that the court find that he had satisfied the requirements of App. R.

26(B) (Doc. 7-13, pp. 258-263).  On April 27, 2011, the Ninth District Court of Appeals denied

Herrington's App. R. 26(B) application for reopening finding that the new affidavit submitted by

Herrington fell short of meeting the particularity required by App. R. 26(B)(2)(d).  Doc. 7-13,

pp. 264-265.

Herrington attempted to file an appeal from the Ninth District Court of Appeals' denial of

his App. R. 26(B) application with the Ohio Supreme Court.  Doc. 1, pp. 89-91, Doc. 4-1, pp. 3-

---

[12] In his sixth proposition of law in his Memorandum in Support of Jurisdiction filed in the Ohio Supreme Court, Herrington stated that "appellant counsel was ineffective for failure to address a claim of manifest weight of evidence."  Doc. 7-13, p. 203.  His proposed assignment of error number four in his App. R. 26(B) application to reopen differed in that Herrington stated, "[A}ppellant counsel was ineffective for failure to address a claim of manifest weight of evidence, *and the insufficiency of the evidence*."  Doc. 7-13, p. 242 (emphasis supplied).

18.  However, on June 14, 2011, the Ohio Supreme Court's Clerk's Office returned Herrington's submission, received by that office on June 9, 2011, as untimely because Herrington did not include the court of appeals' decision being appealed and he had noted that the date of judgment he was appealing was March 8, 2011.  Doc. 1, pp. 26-27, 89, Doc. 4-1, p. 6.  The Ohio Supreme Court's Clerk's Office advised Herrington of the provision for delayed appeals but also advised that that provision did not apply to certain matters, including appeals brought pursuant to App. R. 26(B).  Doc. 1, p. 89.  Thereafter, Herrington filed a Motion for Leave to File Delayed Appeal that was received by the Ohio Supreme Court on July 5, 2011.  Doc. 1, pp. 26-27, 92-102.  However, the Ohio Supreme Court's Clerk's Office advised Herrington on July 6, 2011, that his submission was not filed because his submission did not comply with the Rules of Practice of the Supreme Court of Ohio.  Doc. 1, pp. 26-27, 92.  The Ohio Supreme Court's Clerk's Office informed Herrington that "the provision for delayed appeal does not apply to cases involving post conviction relief, including those brought pursuant to Appellate Rule 26(B)."  Doc. 1, p. 92.  Thus, Herrington was advised that "the Clerk's Office must refuse to file the motion."  Doc. 1, p. 92.

## C.    Federal Habeas Corpus

On April 23, 2012, Herrington, acting *pro se*, filed his Petition under 28 U.S.C. § 2254 and, on May 21, 2012, Harrington filed a Supplement to his Petition.  Doc. 1, Doc. 4.  Herrington has asserted nine grounds for relief that are set forth and discussed below in Section III.C.  Respondent filed his Return of Writ (Doc. 7) and Petitioner filed a Traverse (Doc. 16).

### III.     Law and Analysis

**A.     Standard of Review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.[13] *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."

---

[13] The AEDPA statute of limitations for filing a petition for a writ of habeas corpus is one year and it begins to run on the date judgment became final. 28 U.S.C. § 2244(d)(1).  The statute of limitations has not been raised as an issue in this case.

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 562 U.S. —, —, 131 S. Ct. 770, 786–87, 178 L.Ed.2d 624 (2011)). This bar is "difficult to meet" and "was meant to be" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-103, 131 S.Ct. 770, 178 L.Ed.2d 624 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.      Exhaustion and Procedural Default**

**1.   Exhaustion**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003))

("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987). In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law. *McMeans,* 228 F.3d at 681.

### 2. Procedural Default

A petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still

available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of

appeals constituted a waiver).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.  "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Id.*  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## C.  Grounds for Relief

### 1.  Ground One

**Ground One:** Petitioner was denied his equal protection, due process and Sixth Amendment Constitutional right to the effective assistance of trial counsel.

Doc. 1, pp. 5, 28-35.

In his brief filed with the Ninth District Court of Appeals and in his Memorandum in Support of Jurisdiction filed with the Ohio Supreme Court, Herrington argued that his trial counsel was constitutionally ineffective in three ways: (1) failing to request a jury instruction on

self-defense; (2) failing to object to testimony offered by the State from another police officer bolstering the credibility of the alleged victim, a police officer;[14] and (3) conceding guilt of the defendant on two felony counts, i.e., one count of aggravated robbery and having weapon under disability.  Doc. 7-13, pp. 101, 114-122, 196-198.

In Ground One, Herrington argues that his trial counsel was ineffective for the three reasons presented to the state courts.  Doc. 1, pp. 28-32, 34-35.  Also, in Ground One Herrington appears to raise for the first time additional instances of alleged ineffective assistance of trial counsel, including failure to file motions requesting files of various Akron police officers; failure to file motions requesting files of a witness for the State (Kristi Milano) from her employer and insurance company and Milano's phone records; a failure to listen to June 20, 2008, phone conversations that were recorded at the Summit County jail; failure to file a witness list; failure to subpoena the witnesses that Herrington requested that his trial counsel subpoena; failure to confront Officer Kennedy or Akron police detective Schaefer regarding an interview with Carissa Campbell that occurred following the altercation.  Doc. 1, pp. 33-34.   However, Herrington did not present these additional instances of alleged ineffective assistance of trial counsel to the state courts.  Since Herrington did not fairly present these additional instances of alleged ineffective assistance of trial counsel to the state courts in the same manner that he now presents them in his habeas Petition and since he cannot show that state court remedies remain available to him to raise those claims, he has procedurally defaulted those additional claims.

---

[14] As part of his argument regarding trial counsel's failure to object to the testimony offered by another police officer, Herrington argued that "despite the absence of prior impeaching or negative reputation or character evidence against Kennedy presented by the defense," trial counsel failed to object to the testimony from Akron Police Officer, Lauri Natko that "Officer Kennedy 'has proven himself to be very consistent, very reliable and a very honest person, and an officer that I would like to work with and an officer that I trust.  So that is why I believe what he tells me.'" Doc. 7-13, p. 116 (citing Transcript pp. 590-591).  Herrington also argued that trial counsel "further failed to object when the state emphasized Kennedy's honesty and character based upon this testimony in closing arguments."  Doc. 7-13, p. 116 (citing Transcript p. 1022).

14

*Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681 (a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts). To overcome the procedural default bar, Herrington must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or must show that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750. Herrington has failed to do either. Thus, the Court's consideration of Herrington's Ground One claims is limited to those claims that Herrington fairly presented to the state courts.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a Sixth Amendment right not just to counsel but to "reasonably effective assistance" of counsel. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged from the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

To establish that his attorney was constitutionally ineffective, Herrington must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id*. at 688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

To satisfy the second, "prejudice," prong under *Strickland*, a petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the outcome of the trial would have been different. *Id.* at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990) (quoting *Strickland,* 466 U.S. at 691).

Since the three claims of ineffective assistance of counsel listed above were adjudicated on the merits by the Ohio Court of Appeals, this Court must give AEDPA deference to that adjudication. *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011). The Supreme Court recently emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 103-105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (internal citations omitted).

In addressing Herrington's claims, the Ninth District Court of Appeals correctly recognized that *Strickland* governs claims of ineffective assistance of counsel,[15] stating:

> {¶ 5} In his first assignment of error, Herrington contends that he was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. This Court disagrees.

> {¶ 6} Herrington makes several arguments in support of his first assignment of error. Initially, Herrington contends that trial counsel should have requested a jury instruction on self-defense. Herrington further asserts that trial counsel rendered ineffective assistance by failing to object to the testimony of Officer Laurie Natko, as well as the State's reference to that testimony in its closing argument. Finally, Herrington argues that trial counsel rendered ineffective assistance by conceding guilt on the offenses of aggravated robbery and having weapons under disability during closing argument.

> {¶ 7} In order to prevail on a claim of ineffective assistance of counsel, Herrington must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds* (1998), 80 Ohio St.3d 670, 674, 687 N.E.2d 1358, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. Thus, a two-prong test is necessary to examine such claims. First, Herrington must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith* (1997), 79 Ohio St.3d 514, 534, 684 N.E.2d 47, citing *Strickland,* 466 U.S. at 687. Second, Herrington must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Id.*

> {¶ 8} The Supreme Court of Ohio has recognized that a court need not analyze both prongs of the *Strickland* test, where the issue may be disposed upon consideration of one of the factors. *State v. Bradley* (1989), 42 Ohio St.3d 136, 143, 538 N.E.2d 373. Specifically,

---

[15] In addition to arguing that his counsel was ineffective under *Strickland*, Herrington also cites *United States v. Cronic*, 466 U.S. 648 (1984).  Doc. 1, p. 28, Doc. 16, pp. 5, 17-19.  In *Cronic*, the Supreme Court recognized that, in very limited circumstances, such as the complete absence of counsel or the denial of counsel at a critical stage of trial, a presumption of prejudice could apply.  *Moss v. Hofbauer*, 286 F.3d 851, 859-863 (6th Cir. 2002) (discussing *Cronic* and *Strickland*).  Here, while Herrington cites to *Cronic*, *Strickland* rather than *Cronic* is the proper standard for evaluating Herrington's claim that his counsel was ineffective, including his claim based on a concession of guilt.  *See Goodwin v. Johnson*, 632 F.3d 301, 308-312 (6th Cir. 2011) (concluding that the Ohio Supreme Court did not apply *Strickland* unreasonably when rejecting petitioner's claim that his trial counsel was ineffective during the guilt phase of death penalty trial when conceding guilt during opening and closing statements); *see also Darden v. United States*, 708 F.3d 1225, 1229-1231 (11th Cir. 2013) (finding that *Strickland,* not *Cronic's* presumed prejudice standard, was the proper standard under which to evaluate defense counsel's strategic concession).

" 'Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.' " *Bradley,* 42 Ohio St.3d at 143, 538 N.E.2d 373, quoting *Strickland,* 466 U.S. at 697.

{¶ 9} It is well-settled that, "debatable trial tactics do not give rise to a claim for ineffective assistance of counsel." *State v. Hoehn,* 9th Dist. No. 03CA0076-M, 2004-Ohio-1419, at ¶ 45, citing *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189. Even if this Court questions trial counsel's strategic decisions, we must defer to his judgment. *Id.* The Ohio Supreme Court has stated:

" 'We deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the best of available practices in the defense field.' * * * Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client." *Id.,* quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 623.

*Herrington*, 2010 WL 5548620, * 1-2.   After enunciating the *Strickland* standard for analyzing claims of ineffective assistance of counsel, the Ninth District Court of Appeals evaluated Herrington's claims of ineffective assistance of trial counsel.

<u>*Alleged ineffective assistance of counsel claim based on failure to request self-defense jury instruction*</u>

The Ninth District Court of Appeals first addressed Herrington's claim that his trial counsel was ineffective for not requesting a jury instruction on self-defense.  In evaluating that

claim, the Ninth District Court of Appeals stated that it could not say that defense counsel acted

unreasonably by not requesting a self-defense jury instruction and the court also concluded that

Herrington had not demonstrated that the result of his trial would have been different but for his

trial counsel's decision not to request a self-defense jury instruction.  More particularly, the

Ninth District Court of Appeals stated:

> {¶ 10} In support of his position that counsel rendered ineffective assistance by failing to request a jury instruction on self-defense, Herrington points to the Second District's decision in *State v. Fritz,* 2d Dist. No. 20796, 2005-Ohio-4736, 163 Ohio App.3d 276, 837 N.E.2d 823. In *Fritz,* the Court stated:

>> "A court's jury instruction must be based on the actual issues in the case as presented by the evidence. Thus, a court should not give an instruction unless it is specifically applicable to the facts in the case. To determine whether an instruction on self-defense is warranted, the trial court must determine whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue.' " (internal citations and quotations omitted). *Id.* at ¶ 19, 837 N.E.2d 823.

> {¶ 11} Generally, the failure to request jury instructions is purely a matter of trial tactics and will not be disturbed upon review. See *Clayton,* 62 Ohio St.2d at 47-49, 402 N.E.2d 1189. Here, the theory of the case presented by defense counsel did not encompass self-defense. This Court has stated that by claiming self-defense, a defendant " 'concedes [that] he had the purpose to commit the act, but asserts that he was justified in his actions.' " *State v. Griffin,* 9th Dist. No. 23459, 2007-Ohio-1944, at ¶ 7, citing *State v. Howe* (July 25, 2001), 9th Dist. No. 00CA007732, quoting *State v. Barnd* (1993), 85 Ohio App.3d 254, 260, 619 N.E.2d 518. In his opening statement, trial counsel did not indicate that Herrington would be raising any affirmative defenses. Instead of claiming that Herrington was justified in his actions, trial counsel stated "there are some things that Mr. Herrington is wrong about. Yes, he should not have had a gun in his hand, let alone the officer's gun. He should not have done or reacted the way he did." In his closing argument, defense counsel acknowledged that Herrington "commit[ted] his first crime by taking the officer's gun" but then argued that Herrington did not have the requisite mental state to be convicted of several of the charges for which he was indicted. Thus, the decision not to request a self-defense jury instruction, which would have been inconsistent with his theory of the case, fell within the purview of trial tactics and did not equate to ineffective assistance of counsel. See *Hoehn* at ¶ 45.

{¶ 12} Herrington attempts to bolster his argument that a self-defense jury instruction should have been requested by highlighting his own testimony. Herrington testified that he was "level-headed" and "even toned" as he tried to explain the situation when Officer Kennedy entered the house. Herrington testified that Officer Kennedy ordered Herrington to sit down. Herrington testified that when he attempted to stand up, Officer Kennedy grabbed Herrington and attempted to throw him to the ground. Herrington testified that when he was resistant to the force, Officer Kennedy said "f* * * this" and pulled out his gun and pointed it at Herrington's forehead. Herrington testified that he put his hands up and took a step back. Herrington testified that he thought "I am dead, and it is going to be justified" because "I'm an ex-felon." Herrington testified that he then grabbed the gun and, after a struggle, eventually wrestled it away from Officer Kennedy. Herrington testified that he was holding the gun down by his side with his right hand when Officer Garey entered the house. Herrington testified that, as he was back-peddling, he released the clip from the gun and ejected the bullet from the chamber as Officer Garey approached him. Herrington testified that he was never ordered to get on the ground. Herrington testified that he put the gun down on his own and that it was not knocked out of his hand. Herrington testified that after he put the gun down, Officer Kennedy punched him in the eye. Herrington testified that Officer Garey then put his gun away and drew his baton. Herrington testified that the struggle which ensued resulted in Herrington falling into and breaking a window. Herrington further testified that, at this point, both Officer Garey and Officer Kennedy had drawn their batons. Herrington testified that after he turned his back in submission, the "beating" lasted "[a]nywhere from thirty seconds to a minute." Herrington testified that he did not make any comments to Officer Garey regarding what he should have done to Officer Kennedy. Herrington also testified that he did not raise his voice or "throw[ ] a fit" in the paddy wagon. When asked if he intended to "shoot and/or kill" anybody during the incident, Herrington responded, "No, I did not." Herrington further testified that he did not cause serious physical harm to anyone during the incident.[1]

> [Footnote 1 - After Herrington testified that he did not have the intent to "shoot and/or kill" anyone during the incident, he was then asked, "Did you have an opportunity to assault or cause any physical-serious physical alarm to anyone that day?" Herrington answered, "Yes, I did." Defense counsel then asked, "Did you?" Herrington responded, "No."]

{¶ 13} Given Herrington's testimony, we cannot say that defense counsel acted unreasonably by not requesting a self-defense jury instruction. Herrington testified that he did not have the intent to shoot or kill during the incident. Herrington also testified that he did not cause serious physical harm to anyone during the incident. This testimony was inconsistent with a claim of self-defense, in which a defendant "concedes [that] he had the purpose to commit the act, but asserts that he was justified in his actions." See *Griffin* at ¶ 7

{¶ 14} We further note that Herrington's testimony was in direct conflict with that of other witnesses. Officer Kennedy testified as follows. Officer Kennedy responded to the scene after dispatch received a call from a female who indicated that the father of her child had thrown her keys on a neighbor's roof. After speaking with the woman who placed the call, later determined to be Kristi Milano, Officer Kennedy approached Minnie Herrington and asked her if Damond Herrington was there. Minnie Herrington answered in the negative. Officer Kennedy testified that he then observed a male inside the house. When Officer Kennedy asked Minnie Herrington who was in the house, she responded that nobody was there. Officer Kennedy then entered the home and encountered Herrington. Officer Kennedy testified that when he entered the house, Herrington was "a little agitated" but cooperating. Officer Kennedy testified that Minnie Herrington was yelling "get the f* * * out." Herrington's sister, Adrienne, was encouraging Herrington to cooperate at first but became agitated when Officer Kennedy told Minnie Herrington to "be quiet" because she had lied about Herrington not being there.

{¶ 15} As Minnie and Adrienne Herrington became more agitated, Herrington got up from his chair and said he was leaving. Officer Kennedy testified that he grabbed Herrington's arm and told him to sit down so they could resolve the issue. Herrington then asked what would happen if he left and Officer Kennedy then informed him that he would be placed under arrest. Officer Kennedy testified that Herrington then "bum rushed" him. Officer Kennedy explained that Herrington "[c]harged at me and ended up hitting chest to chest." Officer Kennedy testified that he did not want Herrington to leave because the woman who had placed the call to the police was standing outside. After Herrington charged him, Officer Kennedy testified that he put Herrington in a headlock. As he and Herrington fell onto a loveseat, Officer Kennedy felt Herrington was "tugging" at his gun. Officer Kennedy then sent out a "signal 5" distress call. Officer Kennedy testified that Herrington was "pulling so violently I actually thought he was pulling off the belt." After Herrington was able to remove the gun from Officer Kennedy's holster, the two individuals engaged in a "tug of war" for the gun. Herrington eventually pulled the gun away from Officer Kennedy. Officer Kennedy testified that Herrington pointed the gun at him and screamed, "you're f* * *ing dead, you're f* * *ing dead, what are you going to do now, you're f* * *ing dead." Officer Kennedy testified that he could see Herrington's finger on the trigger. Officer Kennedy testified that Herrington lowered the gun at the time Officer Garey came through the door. As the two men approached Herrington, he did not comply with any of the orders he was given. Officer Kennedy testified that the gun "went flying" out of Herrington's hand as the officer began to strike him.

{¶ 16} Herrington's testimony was also directly contradicted by the testimony of Officer Ronald Garey. Officer Garey testified as follows. Officer Garey testified it sounded like Officer Kennedy was "fighting" when he put out his "signal 5" distress call. When Officer Garey arrived at the home, he saw three ladies standing outside. As he entered the home, Officer Garey saw Herrington holding a

gun "out to the side" in such a way that "clearly he is showing it to me that he's got it." Officer Garey testified that the gun was not pointed at either himself or Officer Kennedy. Officer Garey immediately drew his gun and started "issuing orders to drop the gun or get on the ground." According to Officer Garey, there was a lot of screaming, including "an old woman yelling, get the f* * * out of my house." Herrington did not obey Officer Garey's commands and instead pointed the gun into the dining room. While Herrington was still holding the gun, Officer Garey kicked Herrington in the stomach with the intent of knocking him to the ground. Herrington then reached up and removed the magazine from the gun. At this point Officer Garey noticed the gun was a Glock, which is carried by Akron police officers. As Officer Kennedy approached Herrington, he cleared the round by expelling the bullet from the chamber. Officer Garey continued to give the order to get on the ground but Herrington did not comply. Officer Garey testified that he used his asp because Herrington was resisting arrest and "physically fighting" with the officers. When the officers did get Herrington on the ground, Minnie Herrington grabbed Officer Garey from behind and pulled him away from Herrington. Officer Garey testified he was able to push Minnie Herrington away and go back to Damond Herrington. Officer Garey testified that, after the officers finally did handcuff Herrington, Officer Kennedy was "very shaken, very upset." Officer Garey testified that the period of time that elapsed between the time he entered the house and the time Herrington was subdued was about five seconds. As Herrington was being taken from the house to the paddy wagon, Herrington told Officer Garey, "I should have killed that f* * *ing cop."

{¶ 17} Herrington's testimony was also contradicted by the testimony of Officer William Price. Officer Price escorted Herrington to the paddy wagon after he was taken in custody. When asked what Herrington said to him, Officer Price testified as follows:

> "Besides the cussing and everything, he was being belligerent, I mean just going on, ranting and raving, talking real loud, by the wagon, before I put him in, he looks over like, looks over his shoulder toward like, that is why I took that punk ass officer's gun ."

{¶ 18} Officer Laurie Natko also testified on behalf of the State at trial. Officer Natko testified that she was about fifteen feet from Herrington as he was placed in the paddy wagon. Officer Natko further testified as follows:

> "The wagon was rocking back and forth. Damond [Herrington] was handcuffed behind his back, he was thrashing his body back and forth, and he was screaming at the top of his lungs. It drew the attention of me and everybody else standing on the side watching."

{¶ 19} While Herrington relies on his own testimony as a basis for why defense counsel should have requested a self-defense jury instruction, the record indicates

22

that Herrington's testimony was directly contradicted by the testimony of Officer Kennedy, Officer Garey, Officer Price, and Officer Natko. According to Officer Kennedy, Herrington removed Officer Kennedy's gun from its holster and then wrestled the gun away from Officer Kennedy. Officer Kennedy testified that Herrington pointed the gun at him and used threatening language. Officer Kennedy further testified that Herrington would not comply with orders and that he did not drop the gun until it was knocked out of his hands. Officer Garey also testified that Herrington failed to comply with direct orders to drop the gun and get on the ground and that he fought with the officers as they attempted to subdue him. Officer Garey testified that only five seconds elapsed from the time he entered the house to the time Herrington was subdued. Officer Garey further testified that Herrington said he should have killed Officer Kennedy as he was being taken to the paddy wagon. Officer Price testified that Herrington was belligerent and loud as he escorted him to the paddy wagon. Officer Natko testified that Herrington was "thrashing his body back and forth" and "screaming at the top of his lungs" as he was placed in the paddy wagon. This testimony by the officers directly contradicts Herrington's testimony with respect to his behavior on the afternoon of the incident. In light of the issues surrounding the credibility of his testimony, Herrington has not demonstrated that the result of trial would have been different but for defense counsel's decision not to request the jury instruction. Therefore, he cannot prevail on his initial argument in favor of his assignment of error.

*Herrington*, 2010 WL 5548620, * 3-6.

Herrington contends that his trial testimony supported a claim of self-defense and therefore his counsel was ineffective in not requesting a jury instruction on self-defense. Doc. 1, pp. 28-32, Doc. 16, pp. 4-13. However, as demonstrated above, the state court thoroughly considered Herrington's first claim of ineffective assistance of trial counsel and properly applied *Strickland* to the claim. *Id.*

The Sixth Circuit has stated that a defendant is entitled to a jury instruction on self-defense if requested and if "there exists evidence sufficient for a reasonable jury to find in his favor." *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002) (quoting *Mathews v. United States*, 485 U.S. 58, 63-64, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)). In evaluating Herrington's claim with respect to the self-defense jury instruction, the state court noted that, in Ohio, when claiming

self-defense,[16] "a defendant concedes [that] he had the purpose to commit the act, but asserts that he was justified in his actions. *State v. Griffin,* 9th Dist. No. 23459, 2007-Ohio-1944, at ¶ 7, citing *State v. Howe* (July 25, 2001), 9th Dist. No. 00CA007732, quoting *State v. Barnd* (1993), 85 Ohio App.3d 254, 260, 619 N.E.2d 518." *Herrington*, 2010 WL 5548620, *3 at ¶ 11 (internal quotations omitted).

The state court proceeded with its analysis and found that Herrington's testimony that he did not have the intent to shoot or kill during the incident and that he did not cause serious physical harm to anyone during the incident was inconsistent with a claim of self-defense under Ohio law.  *Id.*at ¶¶ 12-13.  The state court also found that a claim of self-defense would have been inconsistent with the defense's theory of the case, i.e., that Herrington did not have the requisite mental state to be convicted of several of the charges.  *Id.* at ¶ 11. Thus, the state court concluded that his trial counsel's decision not to request to a jury instruction on self-defense did not rise to the level of ineffective assistance of counsel.  *Id.*  Instead, the state court concluded that the decision not to request a jury instruction fell within the purview of trial tactics.  *Id.* Further, the state court concluded that, while Herrington relied upon his own testimony to demonstrate that a self-defense jury instruction was warranted, the record showed that Herrington's testimony was contradicted by the testimony of four officers and, in light of the issues surrounding the credibility of his testimony, Herrington was unable to demonstrate that the result of the trial would have been different but for his counsel's decision not to request a self-defense jury instruction.[17]  *Id.*  at ¶¶ 14-19.

---

[16] The elements of self-defense in Ohio are: "(1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger." *State v. Melchior*, 56 Ohio St.2d 15, 20-21 (1978) (internal citations omitted).

[17] In his federal habeas petition, Herrington attempts to bolster his claim through reliance on evidence not presented at trial and through new claims of ineffective assistance of trial counsel.  For example, he argues that, if trial counsel

Herrington disagrees with the state court's decision and attempts to argue his claim de novo.  However, he has failed to demonstrate that the state court's application of *Strickland* was contrary to or an unreasonable application of clearly established federal law and considering the double layer of deference provided to state court determinations under *Strickland*, the undersigned recommends denial of federal habeas relief based on Herrington's Ground One Claim premised on alleged ineffective assistance of counsel for not requesting a self-defense jury instruction.

> *Alleged ineffective assistance of counsel based on failure to object to testimony offered by*
> *a State's witness and failure to object during closing argument regarding that testimony*

With respect to Herrington's claim that his trial counsel was ineffective for failing to object to testimony offered by a fellow police officer of the victim and/or for failing to object when the prosecutor referred to that testimony during closing arguments, the Ninth District Court of Appeals found that trial counsel was not ineffective because defense counsel had opened the door for the testimony and there was no basis to object.  *Herrington*, 2010 WL 5548620, * 6-7. More particularly the Ninth District Court of Appeals stated:

> {¶ 20} Herrington's second argument in support of his first assignment of error is that trial counsel rendered ineffective assistance by failing to object when Akron Police Officer Natko testified that Officer Kennedy "has proven himself to be very consistent, very reliable and a very honest person, and an officer that I would like to work with and an officer that I trust." Herrington argues trial counsel should have objected to this testimony because the defense had not presented any prior impeaching or character evidence against Officer Kennedy. Herrington also notes that the trial counsel did not object when the State referred to this testimony during closing arguments.

---

had presented evidence regarding a statement provided by Carissa Campbell to the police there would have been evidence to support his claim that Officer Kennedy had put a gun to his head and the outcome would have been different.  Doc. 1, pp. 33-34, Doc. 16, pp. 7-8.  However, to the extent that Herrington relies on factual and legal underpinnings not fairly presented to the state courts those claims are not properly before this Court in federal habeas review.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts).

{¶ 21} On direct examination, Officer Natko testified that, after the incident had occurred, she was asked by Major Hall to pick up Officer Kennedy's wife, Angela, and take her to the hospital. Officer Natko testified that Major Hall had briefed her on what had taken place during the incident. Officer Natko testified that she told Angela Kennedy that "[O]fficer Kennedy was fine, he had been involved in an altercation, his weapon was taken away and he was slightly injured." Officer Natko took Angela Kennedy to the emergency room at Akron General Hospital where Officer Kennedy was being treated. Officer Natko testified that Officer Kennedy was very emotional when she and Angela Kennedy arrived at the hospital.

{¶ 22} On cross-examination, defense counsel's initial questions focused on the fact that Officer Natko had not witnessed what transpired in the house prior to her arrival and that she was relying on what she had been told by others. Defense counsel then elicited testimony that Officer Natko and Officer Kennedy had a professional rapport and that both were members of the Fraternal Order of Police. Defense counsel then asked Officer Natko, "As a result of that closeness, professionally, the brotherhood, et cetera, you accept everything that you are told and give it blind faith; is that accurate?" Officer Natko replied, "Not always, no." Officer Natko then clarified that, in this case, she was relying on the reports she received from other officers. The following exchange then took place between defense counsel and Officer Natko.

> "Q: And part of that, part of the reason for that is because of what you were told is such an egregious set of circumstances and facts, correct?

> "A: Part of it is because of my knowledge of [O]fficer Kennedy.

> "Q: And any other part must be the facts that are alleged here, correct?

> "A: It is really my knowledge of [O]fficer Kennedy."

{¶ 23} On re-direct examination, Officer Natko was asked to clarify what she meant by her "knowledge of Officer Kennedy." Officer Natko testified:

> "As I stated earlier, Officer Kennedy and I, we work neighboring districts, so I rely on him a lot and he relies on me a lot to back each other up on various types of calls. You deal in rapport, you rely on somebody, you learn to-I mean, you go on calls and you watch how they handle calls and there (sic) to watch how you handle calls, and you become pretty much the same on how you handle those calls because your partner[s] basically, and based on my experience with [O]fficer Kennedy in the years I have worked with him on numerous calls that I responded, he has proven

himself to be very consistent, very reliable and a very honest person, and an officer that I would like to work with and an office that I trust. So that is why I believe what he tells me."

Trial counsel for Herrington did not object to this testimony.

{¶ 24} Defense counsel attempted to demonstrate that Officer Natko's testimony was unreliable because the fraternal nature of her relationship with other officers would cause her to accept anything she was told by other officers as true. On re-direct examination, the State asked Officer Natko to clarify why her "knowledge of Officer Kennedy" impacted why she believed the account of what transpired during the incident to be credible. Because defense counsel "opened the door" for this line of testimony when he asked whether Officer Natko would accept everything she was told by others officers in "blind faith," defense counsel did not have a basis to object to Officer Natko's testimony on re-direct examination. See *State v. Smith* (Nov. 8, 2000), 9th Dist. No. 99CA007399. Thus, defense counsel did not render ineffective assistance by not objecting to the testimony.

*Herrington*, 2010 WL 5548620, * 6-7.

As reflected in the state court's analysis, the allegedly objectionable testimony came during re-direct and after trial counsel had opened the door to that testimony when attempting to show that Officer Natko's testimony would be unreliable based on her relationship with the victim. *Herrington*, 2010 WL 5548620, * 6-7 at ¶¶ 21- 24. Thus, the state court found that there would have been no basis for an objection and therefore trial counsel was not ineffective for failing to object. *Id.*

In arguing his claim, Herrington cites to state law decisions finding ineffective assistance of counsel where an expert offered testimony regarding the veracity of child victims. Doc. 1, p. 35 (citing *State v. Edwards* (1997), 123 Ohio App.3d 43 and *State v. Jones* (1996), 114 Ohio App. 3d 306)). However, those cases are distinguishable on their facts and do not demonstrate that the state court's decision was contrary to or an unreasonable application of clearly established federal law. Here, as found by the state court, the door to the allegedly objectionable testimony had been opened by defense counsel during cross-examination. Thus, there was no

basis for objection with respect to the testimony offered during re-direct. Herrington has failed to demonstrate that the state court's determination was contrary to or an unreasonable application of clearly established federal law. Accordingly, considering the double layer of deference provided to state court determinations under *Strickland*, the undersigned recommends denial of federal habeas relief based on Herrington's Ground One Claim premised on alleged ineffective assistance of counsel for not objecting to Officer Natko's testimony and/or the prosecutor's reference to that testimony in closing argument.

### *Alleged ineffective assistance of counsel based on concessions with respect to certain offenses*

With respect to Herrington's final claim of ineffective assistance of counsel, which alleges that his trial counsel was ineffective for conceding guilt with respect to the offenses of having weapons under disability and aggravated robbery, the Ninth District Court of Appeals found that trial counsel's concession was trial strategy and also found that, based on the evidence, Herrington had failed to demonstrate that the outcome of the trial would have been different had defense counsel not conceded guilt on those offenses. *Herrington*, 2010 WL 5548620, * 8. More particularly, the Ninth District Court of Appeals stated:

> {¶ 25} Herrington's final argument in support of his first assignment of error is that trial counsel rendered ineffective assistance in conceding guilt on the offenses of aggravated robbery and having weapons under disability. Trial counsel stated in closing argument that the concession was "offered to [the jury] as a show of credibility and faith." The Supreme Court of Ohio has recognized that a concession of guilt on a charge can fall under the purview of trial tactics. *State v. Elmore,* 111 Ohio St.3d 515, 857 N.E.2d 547, 2006-Ohio-6207, at ¶ 60. Given the emotional nature of the evidence and testimony in this case, trial counsel's concession of guilt was clearly a strategic decision made in an attempt to build rapport with the jury. Moreover, in light of the evidence against Herrington that was discussed above, Herrington has failed to demonstrate on appeal that the outcome of trial would have been different had defense counsel not conceded guilt on the offenses of aggravated robbery and having weapons under disability.

> {¶ 26} Herrington's first assignment of error is overruled.

*Herrington*, 2010 WL 5548620, * 8.

Herrington contends that his trial counsel "inexplicably conceded Herrington's guilt of Aggravated Robbery against a peace officer, and also of Having a Weapon Under Disability." Doc. 1, p. 35.  However, as the record demonstrates and as found by the state court, in conceding having a weapon under disability and one count of aggravated robbery, Herrington's trial counsel explained to the jury that the concession was "offered to you [the jury] as a show of credibility and faith."[18]  *Herrington*, 2010 WL 5548620, * 8 at ¶ 25; Doc. 7-10, p. 85.   Considering trial counsel's explanation for the concession and noting that a concession of guilt can fall within the purview of trial tactics, the state court concluded that, "[g]iven the emotional nature of the evidence and testimony in this case, trial counsel's concession of guilt was clearly a strategic decision made in an attempt to build rapport with the jury."  *Herrington*, 2010 WL 5548620, * 8 at ¶ 25 (citing *State v. Elmore*, 111 Ohio St.3d 515, 857 N.E.2d 547, 2006-Ohio-6207, at ¶ 60); *cf. Goodwin v. Johnson*, 632 F.3d 301, 310 (6th Cir. 2011) (affirming lower court's finding that the Ohio Supreme Court did not unreasonably apply *Strickland* when rejecting a defendant's claim that his counsel was ineffective when conceding guilt in a capital case).   Herrington has not demonstrated that the state court's finding that his trial counsel's concession was trial strategy and not deficient performance was contrary to or an unreasonable application of clearly established federal law nor is the undersigned able to conclude that the state court's analysis was an unreasonable application of *Strickland*.

---

[18] Trial counsel further explained to the jury the concern that, because a police officer was involved, the jury might be inclined to feel that they had to "put him [Herrington] away."  Doc. 7-10, pp. 85-86.  However, he cautioned the jury that they should separate the fact that Herrington had taken a gun from a police officer from the attempted murder charge which required a finding of intent to cause the death of another.  Doc. 7-10, pp. 89-92.

Herrington also argues that self-defense was a valid defense to the offenses of having weapons under disability and aggravated robbery against a peace officer and therefore his counsel's concession prejudiced him.  Doc. 1, p. 35.   However, the state court also found that based on the evidence against Herrington, he failed to demonstrate that the outcome of his trial would have been different had defense counsel not conceded guilt on the two offenses.  *Id.*

Although a concession of guilt may appear troublesome, trial counsel's conduct is nonetheless subject to analysis under *Strickland*, which was the analysis conducted by the state court with respect to Herrington's claim.  Furthermore, the state court's determination under *Strickland* is entitled to deference under AEDPA and federal habeas relief will only lie where a petitioner has demonstrated that the state court's determination was contrary to or an unreasonable application of clearly established federal law.  Here, Herrington has failed to satisfy his burden.  Accordingly, the undersigned recommends denial of federal habeas relief based on Herrington's Ground One Claim premised on alleged ineffective assistance of counsel for his concession of guilt with respect to having weapons under disability and one count of aggravated robbery.

### 2.  Ground Two

**Ground Two:** Petitioner was denied his equal protection, due process rights to effective assistance of trial counsel guaranteed under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel was ineffective for failure to address that the trial court committed plain error in 1) allowing petitioner to represent himself at trial without fully informing petitioner of of all the required factors to determine a knowing, voluntary and intelligent waiver of counsel; 2) then in allowing petitioner's original defense counsel to resume representation rather than declare a mistrial; and 3) failing to sua sponte instruct the jury on petitioner's asserted self-defense.

Doc. 1, pp. 7, 62-66.

In state court, Herrington raised plain error by the trial court, not that his trial counsel was ineffective for failing to address alleged plain error by the trial court. Doc. 7-13, pp. 101, 118-122, 198-199. Respondent argues that Ground Two, which as presented in the Petition raises claims that his trial counsel was ineffective in failing to address plain error allegedly committed by the trial court, is unexhausted and Herrington would now be barred by res judicata from raising the claims in state court. Doc. 7, p. 21. In his Traverse, Herrington contends that there was a typographical error in Ground Two,[19] which he was unable to correct before filing his Petition and asserts that Ground Two should read:

> The Petitioner was denied his equal protection, due process of law then the trial court committed plain error in 1) allowing the petitioner to represent himself at trial without fully informing petitioner of all the required factors to determine a knowing, voluntary and intelligent waiver of counsel; 2) then in allowing petitioner's original defense counsel to resume representation rather than declare a mistrial; and 3) failing to sua sponte instruct the jury on petitioner's asserted self-defense.

Doc. 16, p. 19. He then argues that Ground Two is the exact same argument that he presented to the state courts and thus, contrary to Respondent's contention, Ground Two is exhausted. Doc. 16, p. 19. A court is not required to address a theory of relief asserted only in a traverse but not in the habeas petition. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). Here, however, in addition to the heading for Ground Two in his Petition, Herrington also included supporting arguments. Doc. 1, pp. 62-66. Those arguments do appear to relate to his claim of alleged plain error by the trial court. Thus, inasmuch as pleadings of *pro se* prisoners are liberally construed, *see Haines v. Kerner,* 404 U.S. 519, 520-521 (1972), the undersigned will consider Ground Two exhausted with respect to his assertion of claims of plain error by the trial court, and will not

---

[19] Herrington also states that there was a typographical error on page 62 of his Petition (Doc. 1, p. 63). Doc. 16, p. 19. He appears to be stating that the following underlined language is missing from the last full paragraph on page 63 of Doc. 1: "After another police officer testified . . . the state brought to the trial court's attention that the court had failed to advise or inquire of <u>Herrington about whether he knew of or understood the possible defense to the charges he was</u> facing . . ." Doc. 16, p. 19.

address his new assertion of ineffective assistance of counsel, which Herrington's Traverse states was submitted in error.

Since the state court of appeals considered Herrington's claims now presented in Ground Two and adjudicated those claims on the merits, the state court of appeals' determination regarding those claims is entitled to deference under the AEDPA.

*Alleged failure of trial court to obtain a knowing, voluntary and intelligent waiver counsel*

Herrington first contends that the trial court committed plain error by allowing him to represent himself without obtaining a knowing, voluntary and intelligent waiver.  The state court of appeals thoroughly considered Herrington's claim and found no error stating:

> {¶ 27} In his second assignment of error, Herrington contends that the trial court committed plain error by allowing him to engage in self-representation without obtaining a knowing, voluntary and intelligent waiver of counsel; by allowing Herrington's original counsel to resume representation rather than declare a mistrial; and by failing to sua sponte give a jury instruction on self-defense. This Court disagrees.

> {¶ 28} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon* (1995), 102 Ohio App.3d 758, 767, 658 N.E.2d 16. A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray,* 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶ 12. This Court may not reverse the judgment of the trial court on the basis of plain error, unless appellant has established that the outcome of trial clearly would have been different but for the alleged error. *State v. Kobelka* (Nov. 7, 2001), 9th Dist. No. 01CA007808, citing *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043.

> {¶ 29} At the commencement of trial, Herrington was represented by counsel. Defense counsel actively participated in the voir dire process and delivered an opening statement. There was no cross-examination of the State's first two witnesses, Detective Patrick McMillan and Officer James Alexander, as their testimony served only to establish that Herrington had a prior robbery conviction in 1996 and a felony domestic violence conviction in 2003.

{¶ 30} During the cross-examination of the State's third witness, Officer Ronald Garey, Herrington expressed dissatisfaction with the line of questioning and asked the trial court if he could proceed as a pro se litigant. The trial court informed Herrington that he did have a right to proceed as a pro se litigant but strongly recommended that he not do so. The trial court informed Herrington that he would be held to the same legal standards as an attorney and that he would not be provided any "breaks" simply because he did not have a law degree. Herrington then reiterated that he wanted to represent himself. Defense counsel remained present to act as standby counsel. The trial court then informed Herrington of the nature of the charges pending against him along with the possible penalties associated therewith. The trial court emphasized to Herrington that there would be "dangers in proceeding" pro se because he did not have a legal education which would inform his ability to make certain objections and understand evidentiary rules. The trial court also emphasized that Herrington would be held to the same standard as the prosecutors in following rules of law, and also that the trial court could not act as co-counsel with Herrington. The trial court then had Herrington execute a written waiver of his right to counsel and found on the record that he knowingly, voluntarily, and intelligently waived his right to counsel.

{¶ 31} Herrington proceeded to cross-examine Officer Garey regarding what transpired on the day of the incident. Herrington also cross-examined two additional State witnesses. The first witness was Kristi Milano, who had initially called the police after she and Herrington had a dispute regarding visitation with their daughter. During the cross-examination of Ms. Milano, the trial court sustained numerous objections to the line of questioning regarding their relationship and eventually ordered Herrington to end his questioning. The second witness Herrington cross-examined was Sergeant Jeffrey Mullins, who is assigned to the Akron Police Department's training bureau and police academy. Upon the completion of Sergeant Mullins' testimony on January 13, 2009, the court was in recess until the morning of January 15, 2009. Prior to the State calling its next witness on the morning of January 15, 2009, the State brought to the attention of the Court that, prior to exercising his right to proceed pro se, Herrington had not been told that an attorney would have knowledge of potential defenses. The trial court then informed Herrington that an attorney would have knowledge of any potential defenses which may be applicable to this case. Herrington then indicated he wanted defense counsel to reassume representation. The trial court then gave Herrington time to consult with defense counsel as to whether Herrington should proceed with self-representation. After a short recess, Herrington informed the trial court that he wanted to proceed with his former counsel reassuming representation. When the trial court inquired as to why he wanted the same attorney whom he had fired two days earlier to represent him, Herrington stated,

> "I thought I could approach it in a different perspective, show my perspective or perception of it. It was not the correct way to go about doing it, and I'm not a legal expert."

Herrington also indicated that he understood that there were certain things that could not be "undone," such as cross-examination of witnesses who have already testified.

{¶ 32} Defense counsel stated on the record that there had been "several tactical and strategic endeavors on my part on behalf of Mr. Herrington that have-in my opinion have been undone." Defense counsel also noted that, given the fragmented nature of the representation, he would not expect "frivolous bar complaints [and] grievances" to be filed against him. Herrington indicated that understood and that there would be "[n]o complaints." At this point, defense counsel resumed his representation.

{¶ 33} Herrington argues that the trial court committed plain error by allowing him to engage in self-representation without informing him of possible defenses and other mitigating factors he could assert in his own defense. In support of his position, Herrington relies on this Court's decision in *State v. Yeager,* 9th Dist. No. 21510, 2004-Ohio-2368, in which we stated:

> "In determining the sufficiency of the trial court's inquiry in the context of the defendant's waiver of counsel, the [*State v. Gibson* (1976), 45 Ohio St.2d 366] court applied the test set forth in *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309[ ]:
> " ' * * *To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' " *Yeager* at ¶ 8.

We note that the Supreme Court of Ohio subsequently vacated this Court's judgment in *State v. Yeager,* 9th Dist. No. 21510, 2004-Ohio-2368, and remanded the case for further consideration in light of the Supreme Court's ruling in *State v. Martin,* 103 Ohio St.3d 385, 816 N.E.2d 227, 2004-Ohio-5471. *State v. Yeager,* 103 Ohio St.3d 476, 816 N.E.2d 1072, 2004-Ohio-5707.

{¶ 34} This Court had reexamined its position in *State v. Ragle,* 9th Dist. No. 22137, 2005-Ohio-590, and stated:

> "Although Defendant insists that a trial court *must* consider the factors enumerated in *Von Molkte,* including whether the trial court advised the defendant of possible defenses and mitigating circumstances, this is incorrect. *Gibson* merely quotes the dicta from the plurality decision in *Von Molke* to elucidate the defendant's arguments in that case. See *Gibson,* 45 Ohio St.2d at 377, 345 N.E.2d 399. The Ohio Supreme Court, however, did not

specifically adopt those factors as determinative in decisions regarding waiver of the right to counsel. See *id.* In fact, the facts of *Gibson* reveal that the defendant in that case was *not* specifically advised of possible defenses or mitigating circumstances. See *id.* While the Ohio Supreme Court restated the same factors again in *State v. Martin,* 103 Ohio St.3d 385, 816 N.E.2d 227, 2004-Ohio-5471, at ¶ 40, a finding that the trial court must advise a defendant of defenses and mitigating circumstances, again, was unnecessary to the outcome of the case. Martin actually failed to unequivocally waive his right to counsel by consistently reiterating that he did not wish to serve as his own counsel. *Id.* at ¶ 42, 816 N.E.2d 227." *Ragle* at ¶ 11.

In *Ragle,* we went on to hold that "[t]his Court, likewise, will not adopt a rule which requires a trial court judge to fully acquaint himself with the facts of a case prior to trial in order to undertake pseudo-legal representation of a defendant by specifically advising him of possible viable defense or mitigating circumstances existing in his case." *Ragle* at ¶ 12. In concluding, this Court stated that in determining whether a defendant validly waived his right to counsel, an appellate court "need only consider the totality of the circumstances, including whether Defendant understood the dangers of self-representation, the nature of the charges against him, and the allowable penalties for those charges[.]" *Id.* This Court subsequently emphasized that "no one factor is dispositive[.]" *State v. Trikilis,* 9th Dist. Nos. 04CA0096-M, 04CA0097-M, 2005-Ohio-4266, at ¶ 13. In *State v. Smith,* 9th Dist. No. 23006, 2007-Ohio-51, at ¶ 9, this Court held that a defendant's waiver of counsel was not voluntarily and intelligently made when the record contained no discussion regarding the nature of the charges, the statutory offenses included in them, or the range of allowable punishments. The Court also noted that there had been "no discussion of possible defenses or mitigating circumstances, not even a broad one as mandated by *Ragle.*" *Id.*

{¶ 35} We emphasize, that the unique facts of this case differ from the facts at issue in our prior cases, where the respective defendants made the decision to defend themselves without counsel prior to the commencement of trial. Here, Herrington began the trial represented by counsel. Herrington's attorney gave an opening statement in which he set forth a theory of the case. It was not until after defense counsel had begun cross-examining the State's third witness that Herrington expressed a desire to defend himself without counsel. While this Court has held that a trial judge is not required to fully acquaint himself with the facts of a case in discussing possible defenses and mitigating circumstances, we recognize that, in cases where a defendant elects to proceed pro se in the middle of trial, a judge's perspective as to what is necessary to adequately inform a defendant of the dangers of self-representation will be informed by what has already transpired in the proceedings. In his opening statement, defense counsel did not indicate that Herrington would be asserting any affirmative defenses. In his merit brief, Herrington contends that self-defense was "the one and only defense [ ] asserted

at trial." However, as noted in our resolution of the first assignment of error, this Court has held that by claiming self-defense, a defendant "concedes [that] he had the purpose to commit the act, but asserts that he was justified in his actions." *Griffin* at ¶ 7. In setting forth his theory of the case in his opening statement, defense counsel did not assert that Herrington was justified in his actions. Rather, defense counsel stated "there are some things that Mr. Herrington is wrong about. * * * [H]e should not have had a gun in his hand, let alone the officer's gun. He should not have done or reacted the way he did." Thus, Herrington has not established that the outcome of trial clearly would have been different but for the lack of a discussion of possible defenses. Given the circumstances of this case, the trial court's query into whether Herrington was making a knowing, voluntary, and intelligent waiver of his right to counsel did not result in manifest injustice and, therefore, did not constitute plain error.

*Herrington*, 2010 WL 5548620, *8-11.

The crux of Herrington's claim is that the trial court plainly erred because it allowed him to proceed with self-representation without informing him of and/or making certain that he understood the possible defenses and other mitigating factors that he could assert in his own defenses or that an attorney would be more experienced and able to assert such defenses. Doc. 1, p. 64.

As stated by the Supreme Court in *Iowa v. Tovar*, 541 U.S. 77, 87, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004), "The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all 'critical stages' of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 87 (2004) (internal citations omitted) (considering waiver of counsel at a plea hearing). "A person accused of a crime, however, may choose to forgo representation. While the Constitution does not force a lawyer upon a defendant, it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent." *Id.* at 87-88 (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942) and *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)) (internal quotations omitted)). The Supreme Court in *Tovar* went on to say that a waiver of counsel has been described "as intelligent when the

defendant 'knows what he is doing and his choice is made with eyes open.'" *Tovar*, 541 U.S. at 88 (quoting *Adams*, 317 U.S., at 279, 63 S.Ct. 236).

Herrington relies on state of Ohio cases applying the Supreme Court case of *Von Moltke v. Gillies*, 332 U.S. 708 (1948). In *Von Moltke*, the defendant claimed that she had "neither understandably waived the benefit of the advice of counsel nor was provided with the assistance of counsel as required by the Sixth Amendment." 332 U.S. at 710. The Supreme Court stated in *Von Moltke* that to constitute a valid waiver of counsel, "such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Id.* at 724. It is this language that Herrington relies upon to argue that, because the trial court did not specifically advise him of possible defenses or make certain he understood possible defenses and other mitigating factors, his waiver of counsel was not a knowing, voluntary, and intelligent waiver. Doc. 1, p. 64. However, in its more recent 2004 decision, the Supreme Court stated that it:

> [has not] prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.

*Tovar*, 541 U.S. at 88 (citing *Johnson*, 304 U.S., at 464, 58 S.Ct. 1019). The Supreme Court explained that, prior to being able to proceed with self-representation, a defendant "must be warned specifically of the hazards ahead." *Id.* (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Yet, it also noted that "the information a defendant must have to waive counsel intelligently will 'depend, in each case, upon the particular facts and

circumstances surrounding that case.'" *Tovar*, 541 U.S. at 92 (citing *Johnson*, 304 U.S., at 464, 58 S.Ct. 1019).  Moreover, recently, when considering a petitioner's claim that the trial court erred in allowing him to represent himself, the Sixth Circuit discussed Supreme Court precedent, including *Tovar* and *Von Moltke*, and rejected the petitioner's argument that the state court had unreasonably applied clearly established federal law when it found no error with the trial court's decision to allow the petitioner to proceed with representing himself where the trial court had not informed the petitioner of potential defenses or sentencing factors.  *Akins v. Easterling*, 648 F.3d 380, 398 (6th Cir. 2011) (noting that the law is not clearly established that, when waiving counsel, a trial judge is required to discuss potential defenses and sentencing factors).

Herrington has failed to demonstrate that the state court of appeals' determination regarding his self-representation claim was contrary to or an unreasonable application of established federal law.   Consistent with the Supreme Court's decision in *Tovar*, the state court considered Herrington's claim in light of the particular facts and circumstances of his cases including the trial court's discussion with Herrington when assessing whether he fully understood the risks associated with self-representation as well as arguments made by defense counsel regarding the theory of the case (which did not include affirmative defenses) made prior to Herrington's request to proceed *pro se*.   In doing so, the state court determined that there was no error with respect to the trial court's decision to allow Herrington to represent himself, notwithstanding the lack of specific discussion regarding defenses.

Moreover, in seeking federal habeas relief, the burden is on Herrington to "prove that he did not competently and intelligently waive his right to the assistance of counsel."  *Akins*, 648 F.3d at 398 (quoting *Tovar*, 541 U.S. at 92, 124 S.Ct. 1379).  Other than claiming that his waiver was invalid because the trial court allowed him to proceed with self-representation without

informing him of and/or making certain that he understood the possible defenses and other mitigating factors that he could assert in his own defense or that an attorney would be more experienced and able to assert such defenses (Doc. 1, p. 64), Herrington has not argued or demonstrated that his waiver was not competent and intelligent.  To the contrary, Herrington acknowledges that, after requesting that he be allowed to represent himself, the trial court provided him an opportunity to consult with his counsel before deciding to proceed further with his request for self-representation.  Doc. 1, pp. 62-63, Doc. 7-5, pp. 22-26.  After consulting with his counsel, Herrington advised the trial court that he still wished to represent himself and the trial court proceeded to ask Herrington a series of questions and advise him of, among other things, the charges against him, including the possible sentences that could be imposed if convicted and that he would be held to the same procedural and evidentiary standards as would a lawyer. Doc. 1, p. 63, Doc. 7-5, pp. 26-43.  The trial court strongly suggested that Herrington not proceed with self-representation and that there were dangers associated with proceeding on his own because he did not have the legal education of an attorney to allow him to make certain objections.  Doc. 7-5, pp. 38-39.  The trial court thereafter had Herrington execute a written waiver of counsel.  Doc. 7-5, pp. 42-43.  The trial court required defense counsel to remain seated with Herrington in order to provide advice as necessary.  Doc. 7-5, p. 39.  Herrington noted no objection to defense counsel being required to sit with him.  Doc. 7-5, p. 39.

Based on the foregoing, Herrington has failed to demonstrate that his waiver of counsel was not knowing, voluntary, or intelligent.  Moreover, he has failed to demonstrate that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law.  Accordingly, the undersigned recommends that the Court deny federal

habeas relief on Herrington's Ground Two claim premised on alleged error by the trial court with respect to his self-representation.

### *Alleged plain error by the trial court because it allowed original defense counsel to resume representation as opposed to sua sponte declaring a mistrial*

Herrington's second contention is that the trial court committed plain error by allowing original defense counsel to resume representation once Herrington decided he no longer wanted to represent himself rather than sua sponte declaring a mistrial.  Doc. 1, pp. 64-65.  The state court of appeals addressed this claim as follows:

{¶ 36} Herrington's second argument in support of his second assignment of error is that the trial court committed plain error in allowing Herrington's original defense counsel to resume representation rather than declare a mistrial. "It is well settled that a trial court may grant a mistrial sua sponte or on motion by the parties when 'there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.' " *Cleveland v. Walters* (1994), 98 Ohio App.3d 165, 168, 648 N.E.2d 37, citing *State v. Abboud* (1983), 13 Ohio App.3d 62, 468 N.E.2d 155, quoting *United States v. Perez* (1824), 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165. Because neither Herrington, during the portion of trial when he was defending himself, nor his attorney, moved for a mistrial, this Court must apply a plain error standard of review. In support of his position that the trial court committed plain error by not sua sponte granting a mistrial, Herrington points to his inability to effectively or properly cross-examine witnesses, as well as defense counsel's statement on the record that Herrington may have caused "irreparable harm" to his case by representing himself.

{¶ 37} The Supreme Court of Ohio has stated that, "[t]he Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *Gibson,* 45 Ohio St.2d at paragraph one of the syllabus, citing *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. Here, Herrington made the decision to defend himself without counsel during the cross-examination of Officer Garey. The United States Supreme Court has explained the right to proceed pro se by noting that "[t]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta,* 422 U .S. at 819-820. The *Faretta* court held that a defendant who elects to defend himself "should be made aware of the dangers and disadvantages of self-representation." *Id.* at 835. This is because "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to

counsel." *Id.* As discussed above, the trial court in this case did inform Herrington of the dangers of self-representation and urged him not to proceed pro se. One of the traditional benefits associated with the right to counsel is an understanding of how to properly cross-examine witnesses. The fact that Herrington, by exercising his right to self-representation, may have harmed his chances of prevailing was not reason for the trial court to sua sponte declare a mistrial. As the right to defend was given directly to Herrington, it cannot be said that the choices he made regarding whether to be represented by counsel at different points in the trial undermined the fairness and integrity of the judicial proceedings. Thus, the trial court did not commit plain error in allowing original defense counsel to resume representation.

*Herrington*, 2010 WL 5548620, *12.

Herrington claimed that his inability to conduct effective cross-examination while representing himself may have caused harm to his case. Doc. 1, pp. 64-65.  Therefore, Herrington contends that the state court should have sua sponte declared a mistrial rather than continue the trial with original defense counsel after he decided he no longer wanted to proceed with representing himself.  Doc. 1, pp. 64-65.   The state court of appeals found no error with respect to the trial court's inquiry into whether Herrington was knowingly, voluntarily and intelligently waiving his right to counsel.   *Herrington*, 2010 WL 5548620, *11-12  Thus, while Herrington may have harmed his case as a result of his choice to proceed with his own representation, the state court found that those facts were not a reason for the trial court to sua sponte declare a mistrial and found that the trial court did not err in continuing the trial with Herrington's original defense counsel.  *Id.*

The granting or denying a motion for mistrial is within a trial court's discretion. *Cleveland v. Walters*, 98 Ohio App.3d 165, 168 (8th App. Dist. 1994).  Generally, the issue of whether or not a trial court abused its discretion is a state law issue.  *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).  Thus, to the extent that Herrington raises an issue of state law, his claim is not cognizable. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d

385 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Moreover, to the extent that Herrington has attempted to raise an issue of federal law, he has not clearly articulated the basis of his claim nor has he demonstrated that the state court's determination was contrary to or an unreasonable application of clearly established federal law.  Accordingly, the undersigned recommends that the Court deny federal habeas relief on Herrington's Ground Two claims premised on the trial court not sua sponte declaring a mistrial.

> ### Alleged plain error by trial court in failing to sua sponte give a self-defense jury instruction

In his final contention in Ground Two, Herrington contends that the trial court committed plain error by failing to sua sponte give a self-defense jury instruction.  Doc. 1, pp. 65-66.  The state court of appeals addressed Herrington's claim stating:

> {¶ 38} The final argument Herrington raises in support of his second assignment of error is that the trial court committed plain error in failing to sua sponte give a self-defense jury instruction. In support of his position, Herrington points to the Eighth District's decision in *State v. Wilson,* 8th Dist. No. 91091, 2009-Ohio-1681, 182 Ohio App.3d 171, 912 N.E.2d 133, where the court concluded that the trial court's decision not to give a jury instruction was not plain error because the decision was based on defense counsel's trial strategy. Herrington argues that the facts of this case are distinguishable from *Wilson* in that, here, trial counsel's decision not to request a self-defense jury instruction was not part of a deliberate trial strategy. Rather, Herrington asserts that trial counsel's failure to request a self-defense jury instruction amounted to ineffective assistance of counsel. This Court, however, concluded in our resolution of Herrington's first assignment of error that trial counsel's decision not to request a self-defense jury instruction was part of a trial strategy. Given the theory of the case set forth by trial counsel, the trial court did not commit plain error in not sua sponte giving a self-defense jury instruction.

*Herrington*, 2010 WL 5548620, *13.

Generally, "errors in instructions of a trial court to a jury in a state criminal trial are not reviewable in federal habeas corpus proceedings . . . unless they are so fundamentally unfair as

42

to deprive petitioner of a fair trial and to due process of law." *Shelton v. Seabold*, 198 F.3d 247, *2 (6th Cir. 1999) (citing *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981)). Violations of state law and state court decisions applying state law may not be reviewed by a federal habeas court. *See Estelle*, *supra*; *see also Shelton*, 198 F.3d at *2.

"The due process clause of the Fourteenth Amendment affords criminal defendants 'a meaningful opportunity to present a complete defense' and 'a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.'" *See Horton v. Warden, Trumbull Correctional Inst.*, 498 Fed. Appx. 515, 522 (6th Cir. 2012) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984) and *Mathews v. United States*, 485 U.S. 58, 63 (1988)). Thus, where a defendant has requested a self-defense instruction and the trial court has refused to provide the requested instruction, a defendant may raise a federal constitutional question arising from the state court proceedings.[20] *Id.* (finding that the petitioner had raised a federal claim but concluding that the state court's adjudication did not involve an unreasonable application of clearly established federal law). However, "[a] trial judge's failure to give a jury instruction that the defendant did not request is not an error cognizable through a federal habeas proceeding." *Florence v. Voorhies*, 2010 WL 1882312, at *16 (S.D. Ohio Mar. 29, 2010) *report and recommendation adopted,* 2010 WL 1882132 (S.D. Ohio May 11, 2010) (citing *Miller v. Grant*, 19 F.3d 1433 [table], 1994 WL 102977 (6th Cir.1994) (citing *Manning v. Rose*, 507 F.2d 889, 895 (6th Cir.1974)).

Herrington has not demonstrated that the trial court's failure to provide a self-defense instruction amounted to constitutional error. Here, as discussed *supra*, there was no request for a

---

[20] In *Horton*, the Sixth Circuit recognized that there is "no Supreme Court decision unmistakably setting down" a rule that "a criminal defendant has a due process right to a jury instruction on self-defense" but noted that "Supreme Court precedents include not only bright-line rules but also the legal principles and standards flowing from precedent." *Horton*, 498 Fed. Appx. at 522-523.

self-defense jury instructions and the state court determined that the failure to request such an instruction was not ineffective assistance of counsel.[21]  Additionally, in interpreting state law, the state court of appeals determined that a defense of self-defense was not consistent with Herrington's own testimony that he did not have intent to shoot or kill and did not cause serious physical harm to anyone during the incident and was not consistent with the theory of the case as presented by his defense counsel, which was that he did not have the requisite mental state to be convicted of several of the charges.  *Herrington*, 2010 WL 5548620, * 3-4.  Thus, the state court found no error regarding the trial court's failure to sua sponte instruct on self-defense.

The undersigned concludes that Herrington has not shown that the state court's adjudication of his claim with respect to the trial court not sua sponte giving a self-defense jury instruction is a cognizable claim in habeas review.  Further, even if Herrington could be said to have presented a federal claim reviewable in this Court, Herrington has not demonstrated that the state court's adjudication was contrary to or an unreasonable application of clearly established federal law.  Accordingly, the undersigned recommends that the Court deny Herrington's Ground Two Claim premised on the trial court not sua sponte giving a self-defense jury instruction.

### 3.  Grounds Three through Seven

In Grounds Three through Seven, Herrington alleges that his appellate counsel was ineffective for various reasons.  Doc. 1, pp. 9-17, 67-83.  Herrington asserted these same grounds for relief as propositions of law in his Memorandum in Support of Jurisdiction filed in

---

[21]  In his Petition, Herrington acknowledges that, where the court finds that trial counsel was not ineffective for failing to request a jury instruction, it is not plain error for the trial court not to sua sponte give the jury instruction. Doc. 1, pp. 65-66.

connection with his *pro se* appeal to the Ohio Supreme Court.[22]  Doc. 7-13, pp. 200-210.   The
Ohio Supreme Court denied Herrington leave to appeal and dismissed his appeal as not involving
any substantial constitutional questions.  Doc. 7-13, p. 235.

Although Herrington refers to claims of alleged ineffective assistance of appellate
counsel in the headings of Grounds Three through Seven and presents some argument as to why
he believes the trial court erred and/or why he believes the underlying claims that he asserts
appellate counsel was ineffective for not raising have merit, he does clearly articulate arguments
as to how his appellate counsel was constitutionally ineffective under both the first and second
prongs of *Strickland*.  Nor did he do so in his filings with the state court.   Pleadings of *pro se*
prisoners are liberally construed.  *See Haines v. Kerner,* 404 U.S. 519, 595-96, 92 S.Ct. 594, 30
L.Ed.2d 652 (1972).  However, "[l]iberal construction does not require a court to conjure
allegations on a litigant's behalf[.]"  *Erwin v. Edwards,* 22 Fed. Appx. 579, 580 (6th Cir. 2001)
(citing *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989)).  Thus, in light of the lack of
articulation with respect to his claims of alleged ineffective assistance of appellate counsel, the
Court may conclude that Herrington failed to fairly present and/or waived his claims of
ineffective assistance of appellate counsel.  In the interest of providing the Court with a full and
complete review of Herrington's claims, notwithstanding Herrington's possible failure to fairly
present and/or possible waiver of his ineffective assistance of appellate counsel claims, the
undersigned has evaluated Herrington's claims in Grounds Three through Seven.  As discussed
more fully herein, the undersigned finds those claims to be without merit.

---

[22] Herrington also raised Grounds Three through Seven as proposed assignments of error in his App. R. 26(B)
application for reopening.  Doc. 7-13, pp. 239-249.  The Ninth District Court of Appeals, however, denied
Herrington's App. R. 26(B) application because he had not complied with the procedural filing requirements in that
he failed to  submit a sworn statement that met the requirements of App. R. 26(B).  Doc. 7-13, pp. 264-265.

The provisions of 28 U.S.C. § 2254(d) apply only to claims that were adjudicated on the merits in the state court proceedings. *Waldron v. Jackson*, 348 F.Supp.2d 877, 888 (N.D. Ohio 2004) (citing *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004)). "When a state does not assess the merits of a petitioner's habeas claim, the deference due under AEDPA does not apply." *Id.* "In such a case, the habeas court is not limited to deciding whether the court's decision was contrary to or involved an unreasonable application of clearly established federal [law], but rather conducts a *de novo* review of the claim." *Id.* The Supreme Court has determined that a summary ruling by a state court does not necessarily mean that the claim was not adjudicated on the merits. *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.*

The Ohio Supreme Court's denial of leave to appeal and dismissal of Herrington's appeal as not involving any substantial constitutional question (Doc. 7-13, p. 235) under the standard enunciated in *Richter* may be an adjudication on the merits for purposes of 28 U.S.C. § 2254(d). *See Horton v. Warden, Trumbull Correctional Inst.*, 498 Fed. Appx. 515, 521, n. 1 (6th Cir. 2012). However, since Herrington's ineffective assistance of appellate counsel claims were first raised before the Ohio Supreme Court and not evaluated by the state appellate court, the undersigned will provide Herrington, a *pro se* petitioner, the benefit of the doubt and conduct a *de novo* review of his ineffective assistance of appellate counsel claim rather than apply the

deferential standard of review under 28 U.S.C. § 2254(d). *See e.g., Waldron*, 348 F.Supp.2d at 888.

The right to effective assistance of counsel extends to the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387 (1984). *Strickland v. Washington*, 466 U.S. 668 (1984), establishes the standard for assessing claims of ineffective assistance of counsel, including those relating to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (finding that *Strickland* provided the proper standard for addressing whether appellate counsel was ineffective for failing to file a merits brief); *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

To establish that his attorney was constitutionally ineffective, Herrington must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Accordingly, appellate "counsel has no obligation to raise every possible claim, and the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment." *McFarland*, 356 F.3d at 710 (relying on *Jones v. Barnes*, 463 U.S. 745, 751-54 and *Smith v. Murray*, 477 U.S. 527, 536 (1986)). Counsel's failure to raise an issue on appeal cannot be ineffective assistance unless there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland*, 356 F.3d at 699. Further, counsel cannot be ineffective for a failure to raise an issue that lacks merit. *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). Relevant considerations in analyzing

performance of appellate counsel include whether the omitted issues were significant and obvious; whether there was arguably contrary authority on the omitted issues; and whether the omitted issues were clearly stronger that those presented. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

### a. Grounds Three and Four

**Ground Three:** Petitioner was denied his equal protection, due process rights to effective assistance of appellate counsel guaranteed under the Sixth and Fourteenth Amendments of the Unites States Constitution when appellant counsel was ineffective for failure to address that the trial court errored by failing to merge petitioner's convictions of aggravated robbery and kidnapping.

Doc. 1, pp. 8-10, 67-68.

**Ground Four:** Petitioner was denied his equal protection, due process rights to effective assistance of appellate counsel guaranteed under the Sixth and Fourteenth Amendments of the United States Constitution when appellant counsel was ineffective for failure to address that the trial court committed a violation of equal protection, due process rights guaranteed by the Ohio Constitution, and the Fourteenth Amendment of the United States Constitution by failing to comply with Ohio Revised Code 2941.25.

Doc. 1, pp. 10-11, 69-70.

In Grounds Three and Four, Herrington contends that the offenses of aggravated robbery and kidnapping are allied offenses under O.R.C. § 2941.25[23] because the elements of each offense correspond with each other and the offenses could not be committed with a separate animus. Doc. 1, pp. 8-11, 66-70, Doc. 16, pp. 20-26. Thus, Herrington argues that the trial

---

[23] Ohio's allied offenses statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

O.R.C. § 2941.25.

court was required to merge the two offenses and his appellate counsel was ineffective for failing to challenge the trial court's decision not to merge the offenses.  Doc. 1, pp. 8-11, 66-70, Doc. 16, pp. 20-26.

With respect to the first *Strickland* prong, Herrington must demonstrate that his appellate counsel made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. 668, at 687.  In order words, Herrington must demonstrate that, by not raising an assignment of error regarding allied offenses with respect to aggravated robbery and kidnapping, his appellate counsel's representation fell below an objective standard of reasonableness.  *Id.* at 687-688.  Second, if his appellate counsel's representation were deemed to have fallen below an objective standard of reasonableness, Herrington must still demonstrate that he was prejudiced by his counsel's performance, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*at 694.  With respect to representation on appeal, appellate "counsel has no obligation to raise every possible claim, and the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment."  *McFarland*, 356 F.3d at 710. Failure to raise an issue on appeal cannot be ineffective assistance unless there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.  *McFarland*, 356 F.3d at 699.  Further, counsel cannot be ineffective for failure to raise an issue that lacks merit.  *Willis*, 351 F.3d at 745.

Herrington contends that, under Ohio's allied offenses statute, the trial court was obligated to merge the offenses of aggravated robbery and kidnapping because they are allied offenses of similar import and were committed during the same event and could not be accomplished with a separate animus.   During trial, the trial court considered whether

aggravated robbery and kidnapping were allied offenses and determined that the offenses were not offenses of similar import and that there was a separate animus for the kidnapping charge. Doc. 7-9, p. 7. Herrington has not argued nor demonstrated that his appellate counsel's representation fell below an objective standard of reasonableness in failing to raise an allied offense argument. For example, Herrington has not claimed or demonstrated that his allied offense argument was clearly stronger than other arguments that were presented by his appellate counsel. *See e.g., Mapes*, 171 F.3d at 427 (noting that a relevant consideration in determining whether counsel's performed reasonably competent is was the omitted issue "clearly stronger than those presented."). Further, even if Herrington were able to demonstrate that his appellate counsel was deficient in not raising an allied offense argument, under *Strickland's* second prong, Herrington has failed to demonstrate that "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Herrington was indicted on and found guilty of two counts of aggravated robbery.[24] Doc. 7-2, pp. 19-22 (Count Two - aggravated robbery in violation of O.R.C. § 2911.01(B)(1)/(B)(2) and Count Three – aggravated robbery in violation of O.R.C. § 2911.01(A)(3)), Doc. 7-2, pp. 14-15, 24, Doc. 7-13, p. 93. O.R.C. § 2911.01(B)(1)/(B)(2) (aggravated robbery statute as charged in Count Two) provides:

> (B) No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:
>
> (1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties;

---

[24] The trial court found that the aggravated robbery charge in Count Three merged with the aggravated robbery charge in Count Two and did not sentence Herrington on Count Three. Doc. 7-2, p. 25, Doc. 7-13, p. 94.

    (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.

O.R.C. § 2911.01(B)(1)/(B)(2).

    O.R.C. § 2911.01(A)(3) (aggravated robbery statute as charged in Count Three) provides:

    (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

    ***

    (3) Inflict, or attempt to inflict, serious physical harm on another

O.R.C. § 2911.01(A)(3).

    Herrington was also indicted and found guilty of kidnapping.  Doc. 7-2 (Count Four – kidnapping in violation of O.R.C. § 2905.01(A)(3)), Doc. 7-2, pp. 14-15, 24, Doc. 7-13, p. 93.

O.R.C. 2905.01(A)(3) (kidnapping statute as charged in Count Four) provides:

    (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

    ***

     (3) To terrorize, or to inflict serious physical harm on the victim or another;

O.R.C. § 2905.01(A)(3).

    In 2010, in *State v. Johnson*, 128 Ohio St.3d 153 (2010),[25] the Ohio Supreme Court revisited its prior decisions addressing how to assess whether offenses are allied offenses under O.R.C. § 2941.25.  In doing so, the Ohio Supreme Court stated that:

---

[25] *Johnson* was decided on December 29, 2010, prior to the conclusion of Herrington's direct appeal in state court. Thus, it is appropriate to analyze Herrington's claims under *Johnson*.  *See State v. Loyer*, 2010 WL 1076069, * 1 (Ohio App. Ct. Mar. 22, 2010) ("A new interpretation of a rule or statute by the Ohio Supreme Court is generally applied to cases that are pending at that time, but is not applied to cases that have already completed the direct appeal process.")  Accordingly, to the extent that Herrington relies upon standards enunciated prior to *Johnson* or cases applying those earlier standards, including *State v. Winn*, 121 Ohio St.3d 413 (2009), to support his claim that

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Blankenship,* 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) ("It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses." [Emphasis sic]). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." *Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

*Johnson,* 128 Ohio St.3d at 162-163, ¶¶ 48-51.

In analyzing the offenses of aggravated robbery and kidnapping under O.R.C. § 2941.25 as set forth in *Johnson,*[26] even if the offenses of aggravated robbery and kidnapping were

---

aggravated robbery and kidnapping in his case were allied offenses, the undersigned finds his arguments misplaced and unpersuasive. *See State v. Blackford*, 2012 WL 5288320, * 3 (Ohio App. Ct. Oct. 16, 2012) (not applying *Winn* "as a precedential rule for all allied offense questions involving kidnapping and aggravated robbery convictions" because *Winn* predated *Johnson*). Additionally, even if aggravated robbery and kidnapping were determined to be offenses of similar import under O.R.C. § 2941.25(A), under O.R.C. § 2941.25(B), there is no merger where the offenses are committed separately or with a separate animus. O.R.C. § 2941.25(B).

[26] On March 25, 2015, the Ohio Supreme Court revisited its holding in *Johnson* "with respect to when two or more offenses are allied offenses of similar import." *State v. Ruff*, Slip Opinion No. 2015-Ohio-995. ¶ 1. The Ohio Court stated that "the circumstances of when offenses are of dissimilar import within the meaning of R.C. 2941.25(B) have been unclear." *Id.* The Ohio Supreme Court proceeded to hold that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26. The Ohio Court explained that:

If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other

deemed to be offenses of similar import (which Herrington has not clearly demonstrated), under O.R.C. § 2941.25(B), the undersigned cannot conclude that there is a reasonable probability that, had appellate counsel raised the issue, an appellate court would find that the trial court erred in finding that the offenses were not subject to merger because the evidence supports a finding that the offenses were committed with separate conduct or animus.  The evidence demonstrates that Herrington committed the aggravated robbery when he took Officer Kennedy's gun.  At the time, Officer Kennedy was responding to a domestic disturbance.  Then, after having committed the aggravated robbery by removing Officer Kennedy's gun and prior to Officer Garey arriving on scene, Herrington restrained Officer Kennedy's liberty through use of the officer's loaded gun.  Since the evidence would support a finding that Herrington committed the two offenses with separate conduct or animus, under O.R.C. § 2941.25(B), as found by the trial court, the two offenses would not be not subject to merger and Herrington is unable to demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.   Accordingly, the undersigned concludes that Herrington's appellate counsel's failure to raise an allied offense argument with respect to the charges of aggravated robbery and kidnapping did not rise to the level of constitutionally ineffective assistance of counsel under *Strickland* and recommends that the Court deny federal habeas relief on Grounds Three and Four.

---

words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

*Id.* at ¶ 25.  Since *Ruff* was announced after Herrington's conviction became final, it is not likely that *Ruff* would apply retroactively to Herrington's case.  *See also State v. Kelly*, 997 N.E.2d 215, 221 (Ohio App. Ct. Aug. 26, 2013) ("new judicial ruling may not be applied retroactively to a conviction that has become final").  However, it is not necessary to determine whether *Ruff* would apply retroactively because, under the framework of either *Johnson* or *Ruff*, the undersigned's recommendation with respect to Grounds Three and Four would remain the same, i.e., Herrington is unable to demonstrate that his appellate counsel was constitutionally ineffective under *Strickland* for not raising an allied offense argument on appeal.

### b.  Ground Five

Doc. 1, pp. 10-11, 69-70.

> **Ground Five:** Petitioner was denied his equal protection, due process rights to effective assistance of appellate counsel guaranteed under the Sixth and Fourteenth Amendments of the United States Constitution when appellant counsel was ineffective for failure to address that the trial court committed plain error by failing to instruct the prosecution as to elect which aggravated robbery it will pursue.

Doc. 1, pp. 12-13, 70-71.

As with Grounds Three and Four, Herrington has not argued nor demonstrated that by not raising an assignment of error relating to the trial court's alleged failure to instruct the prosecution to elect which aggravated robbery the State wanted to pursue his appellate counsel's representation fell below and objective standard of reasonableness.  For example, Herrington has not claimed or demonstrated that the argument was clearly stronger than other claims that were presented by his appellate counsel.  *See e.g., Mapes*, 171 F.3d at 427 (noting that a relevant consideration in determining whether counsel's performed reasonably competent is was the omitted issue "clearly stronger than those presented.").  Even if Herrington were able to demonstrate that his appellate counsel was deficient in not raising an argument regarding election of which aggravated robbery the Stated wanted to pursue, under *Strickland's* second prong, Herrington has not demonstrated that "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

As reflected in the sentencing entry, although a jury found Herrington guilty on both aggravated robbery counts, the trial court merged the two aggravated robbery charges for sentencing finding that the two offenses were allied offenses under O.R.C § 2941.25.  Doc. 7-2,

p. 25.  "[I]n cases in which the imposition of multiple punishments is at issue, R.C. 294125(A)'s mandate that a defendant may be 'convicted' of only one allied offense is a protection against multiple sentences rather than multiple convictions."  *See State v. Whitfield*, 124 Ohio St.3d 319, 323 (2010).  Since Herrington was found guilty on both aggravated robbery counts but was sentenced on only one he is unable to demonstrate prejudice under *Strickland* based on appellate counsel not arguing on appeal that the prosecution was required to elect which of the two aggravated robbery counts to pursue.   Accordingly, the undersigned recommends that the Court deny federal habeas relief on Ground Five.

### c.  Ground Six

**Ground Six:** Petitioner was denied his equal protection, due process rights to effective assistance of appellate counsel guaranteed under the Sixth and Fourteenth Amendments of the United States Constitution when appellant counsel was ineffective for failure to address a claim of insufficient weight of evidence.[27]

Doc. 1, pp. 14-15, 72-78.

As with his other claims of ineffective assistance of appellate counsel, Herrington has failed to argue or demonstrate that his appellate counsel's failure to raise a sufficiency of the evidence or manifest weight of the evidence challenge in his direct appeal was objectively unreasonable.  Moreover, Herrington has not demonstrated that, had his appellate counsel raised a sufficiency of the evidence or manifest weight of the evidence claim, there was a reasonable probability that inclusion of the issues would have changed the result of the appeal.  *McFarland*, 356 F.3d at 699.

---

[27] Although not clear in Herrington's heading whether Ground Six is premised on sufficiency of the evidence or manifest weight of the evidence and, although, in the heading of his Sixth Proposition of Law in his Memorandum in Support of Jurisdiction, Herrington referenced manifest weight of the evidence, in the argument sections of his state court filing (Doc. 7-13, pp. 203-207) and Petition (Doc. 1, pp. 73-79), Herrington argues both.  Thus, liberally construing Herrington's *pro se* pleadings, the undersigned has addressed both.

"A manifest weight of the evidence claim[28] concerns 'the inclination of the greater amount of credible evidence, offered in trial, to support one side of the issue rather than the other." *Kolvek v. Eberlin*, 2007 WL 6197483, *12 (N.D. Ohio May 24, 2007), r*eport and recommendation adopted*, 2009 WL 891759 (N.D. Ohio Mar. 31, 2009) (quoting *State v. Tompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546 (1997)).  "When reviewing a weight of the evidence claim, an appellate court sits as a 'thirteenth juror,' and reviews the jury's resolution of conflicting testimony." *Id.* (citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 221, 72 L.Ed.2d 652 (1982)); *see also Thompkins*, 78 Ohio St.3d at 387.   As part of its analysis of Herrington's alleged ineffective assistance of counsel claim with respect to a self-defense jury instruction, the state court of appeals considered Herrington's testimony as well as testimony from other witnesses and concluded that there were issues regarding the credibility of Herrington's testimony.  *See Herrington*, 2010 WL 5548620, * 4-6, ¶¶ 14-19.  In light of the state court of appeals' discussion of the evidence and its assessment that there were issues with respect to the credibility of Herrington's testimony, it cannot be said that there is a reasonable probability that, had appellate counsel included a claim that the jury verdict was against the manifest weight of the evidence, the state appellate court, sitting as the "thirteenth juror," would have concluded that the jury's verdict was against the weight of the evidence.  Accordingly, Herrington cannot demonstrate that his appellate counsel was constitutionally ineffective under the *Strickland* standard for failing to raise a manifest weight of the evidence challenge.

The standard for determining whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational

---

[28] Although a stand alone manifest weight of the evidence claim is not cognizable in federal habeas review, *Brown v. Moore*, 2008 WL 4239160, *8 (S.D. Ohio 2008) (citing 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1998)), here, Herrington's claim is that his appellate counsel was constitutionally ineffective for failing to raise a manifest weight of the evidence challenge.

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.*  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  In making this determination, a court does not reweigh the evidence or redetermine the credibility of the witnesses.  *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).

As with his claim that he was denied constitutionally ineffective assistance of appellate counsel because appellate counsel failed to raise a manifest weight of the evidence challenge, Herrington has failed to demonstrate that there is a reasonable probability that, had appellate counsel included a claim that his conviction was unsupported by sufficient evidence, the outcome would have been different.  In making his argument that his appellate counsel was ineffective in not claiming insufficient evidence to support his convictions, Herrington asks that the Court to weigh and/or consider the credibility of the witnesses' testimony.[29]  Doc. 16, p. 30. For example, in his Traverse, Herrington claims that viewing the transcript as a whole demonstrates that there were "lies and contradictions that the state witnesses told while on the stand."  Doc. 16, p. 30.  As noted above, in considering a sufficiency of the evidence claim, it is not for a reviewing court to reweigh or redetermine the credibility of the witnesses.  Here, when viewing the trial testimony and exhibits in the light most favorable to the prosecution, the undersigned concludes that a rational trier of fact could have found the essential elements of the

---

[29] Herrington also raises some additional issues within his ineffective assistance of appellate counsel argument.  For example, he claims that there was prosecutorial misconduct and failure to call certain witnesses or present certain evidence.  *See e.g.,* Doc. 1, p. 74-76, Doc. 16, pp. 35-36, 46.  Since these claims were not raised as independent claims in state court or in this Court, they were not fairly presented and are not properly before the Court.

crime beyond a reasonable doubt. Thus, Herrington is unable to demonstrate that, had his appellate counsel raised a sufficiency of the evidence challenge, there is a reasonable probability that the outcome would have been different.

Further, while a sufficiency of the evidence claim is different from a manifest weight of the evidence claim, *see Tibbs v. Florida*, 457 U.S. 31, 45 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997), courts have held that, "[w]hen a state appellate court determines that a conviction is not against the manifest weight of the evidence, that necessarily includes a determination that the evidence is sufficient to support the conviction." *Glenn v. Bobby*, 2013 WL 3421888, *9 (N.D. Ohio July 8, 2013); *Baldwin v. Beightler*, 2009 WL 2705922, * 16 (N.D. Ohio Aug. 26, 2009) (quoting *State v. Lee*, 158 Ohio App.3d 129 (2004)) ("because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency"); *Thomas v. Bobby*, 2007 WL 295456, * 2 (N.D. Ohio Jan. 29, 2007) (indicating that, "a court's finding that a conviction is supported by the manifest weight of the evidence necessarily means that the court has found that the conviction is supported by sufficient evidence."). Thus, implicit in the undersigned's prior determination that Herrington would be unable to demonstrate that the state court of appeals would have reached a different outcome had a manifest weight of the evidence challenge been raised, is a finding that a sufficiency of the evidence challenge would not have resulted in a different outcome.

For the reasons set forth above, the undersigned concludes that Herrington has failed to demonstrate that his appellate counsel's failure to raise a manifest weight of the evidence and/or sufficiency of the evidence challenge amounted to constitutionally ineffective assistance of

counsel under *Strickland*.  Accordingly, the undersigned recommends that the Court deny habeas relief on Ground Six.

### d.  Ground Seven

**Ground Seven:** Petitioner was denied his equal protection, due process rights to effective assistance of appellate counsel guaranteed under the Sixth and Fourteenth Amendments of the United States Constitution when appellant counsel was ineffective for failure to address a claim of illegal search and seizure, a violation of the Fourth Amendment of the United States Constitution and Section 14, Article I of the Ohio Constitution.

Doc. 1, pp. 16-17, 79-83.

In Ground Seven, Herrington contends that Officer Kennedy's entry into Herrington's home and arrest unsupported by a warrant deprived him of his right to refuse entry into his home and to be free from an unreasonable seizure of his person.  Doc. 1, p. 82.  Thus, he argues that his appellate counsel was constitutionally ineffective for failing to raise an issue on appeal regarding the alleged illegal entry into his home and seizure of his person.  Doc. 1, pp. 80-83, Doc. 16, pp. 48-53.  While Herrington alleges ineffective assistance of appellate counsel, as with his other claims of ineffective assistance of appellate counsel, he has failed to argue or demonstrate that his appellate counsel's failure to raise a Fourth Amendment challenge in his direct appeal was objectively unreasonable.

At trial, there was no motion to suppress filed with respect to alleged Fourth Amendment violations.  Accordingly, Herrington waived those claims for appeal.[30]  *See State v. Chandler*, 2003 WL 22671580, * 4 (Ohio App. Ct. 2003) (because defendant had failed to file a motion to suppress illegally obtained evidence, on appeal, court found defendant had waived arguments that officer's seizure of his person and subsequent search violated his Fourth Amendment rights).  Thus, since a waiver occurred at the trial court level, raising the issue on appeal would have been

---

[30] Herrington did not raise in state court or in this Court a claim of ineffective assistance of trial counsel based on a failure to file a motion to suppress the alleged illegal entry into his home or seizure of his person.

futile and Herrington's appellate counsel cannot be said to have performed in an objectively

unreasonable manner.[31]  *See Herron v. Kelly*, 2013 WL 3245326, *7 (N.D. Ohio June 26, 2013)

(citing *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000) for the proposition that "failure

by counsel to do something that would have been futile is not ineffective assistance").

Since Herrington has failed to demonstrate that his appellate counsel was constitutionally

ineffective under *Strickland*, the undersigned recommends that the Court deny habeas relief on

Ground Seven.

### 4.  Grounds Eight and Nine

**Ground Eight:** Petitioner was denied his equal protection, due process rights guaranteed under the Sixth and Fourteenth Amendments of the United States Constitution when the Ninth District Court of Appeals, Summit County, Ohio failed to hear the merits of Petitioner's pro se application to reopen his prior appeal pursuant to appellant rule 26(B).

Doc. 1, pp. 18-19, 22, 25-26, 84-102.

**Ground Nine:** Petitioner was denied his equal protection, due process rights guaranteed under the Sixth and Fourteenth Amendments of the United States Constitution when the Ninth District Court of Appeals, Summit County, Ohio abused its discretion by creating a discriminatory ruling when it rules against petitioner's pro se application to reopen his prior appeal pursuant to appellant rule 26(B).

Doc. 1, pp. 20-22, 25-26, 103-107.

In Grounds Eight and Nine, Herrington challenges the Ninth District Court of Appeals'

April 27, 2011, denial of his application to reopen his appeal (Doc. 7-15, pp. 264-265).    On

April 27, 2011, the Ninth District Court of Appeals denied Herrington's App. R. 26(B)

---

[31] Even if the issue had not been waived, Herrington would need to first demonstrate that there was in fact an unconstitutional search or seizure and, even then, evidence of subsequent acts may nonetheless be admissible.  *See e.g., Chandler*, 2003 WL 22671580, * 5 (Ohio App. Ct. Nov. 13, 2003) ("Evidence of a new crime committed subsequent to an illegal arrest or search, is admissible."); *see also State v. Barnes*, 1997 WL 752590, * 3 (Ohio App. Ct. Dec. 5, 1997) ("In cases where the response has been a physical attack upon the officer making the illegal arrest or search, courts have held that the evidence of this new crime is admissible."); *U.S. v. Mathews*, 764 F.Supp.2d 926,  930 (S.D. Ohio June 4, 2010) ("the 'fruit of the poisonous tree' doctrine does not protect a defendant who has committed a crime during an unconstitutional search").

application for reopening on a procedural ground.  Doc. 7-13, pp. 264-265.  The Ninth District Court of Appeals determined that the Herrington's affidavit in support of his application fell short of meeting the particularity required by App. R. 26(B)(2)(d).  Doc. 7-13, pp. 264-265.

Thereafter, Herrington attempted to file an appeal from the Ninth District Court of Appeals' denial of his App. R. 26(B) application with the Ohio Supreme Court.  Doc. 1, pp. 89-91, Doc. 4-1, pp. 3-18.  However, on June 14, 2011, the Ohio Supreme Court's Clerk's Office returned Herrington's submission, received by that office on June 9, 2011, as untimely because Herrington did not include the court of appeals' decision being appealed and he noted that the date of judgment he was appealing was March 8, 2011.  Doc. 1, pp. 26-27, 89, Doc. 4-1, p. 6.  The Ohio Supreme Court's Clerk's Office advised Herrington of the provision for delayed appeals but also advised that that provision did not apply to certain matters, including appeals brought pursuant to App. R. 26(B).  Doc. 1, p. 89.  Thereafter, Herrington filed a Motion for Leave to File Delayed Appeal that was received by the Ohio Supreme Court on July 5, 2011.  Doc. 1, pp. 26-27, 92-102.  However, the Ohio Supreme Court's Clerk's Office advised Herrington on July 6, 2011, that his submission was not filed because his submission did not comply with the Rules of Practice of the Supreme Court of Ohio.  Doc. 1, pp. 26-27, 92.  The Ohio Supreme Court's Clerk's Office informed Herrington that "the provision for delayed appeal does not apply to cases involving post conviction relief, including those brought pursuant to Appellate Rule 26(B)."  Doc. 1, p. 92.  Thus, Herrington was advised that "the Clerk's Office must refuse to file the motion."  Doc. 1, p. 92.

Respondent contends that, because Herrington failed to timely appeal the Ninth District Court of Appeals' April 27, 2011, denial of his application to reopen, Herrington has defaulted

Grounds Eight and Nine and has failed to demonstrate cause and prejudice to excuse the default. Doc. 7, p. 22.

"[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *See Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

As a result of his failure to timely appeal to the Ohio Supreme Court from the Ninth District Court of Appeals' decision denying his application to reopen, Herrington failed to challenge that denial through the state's ordinary appellate review procedure and he would now be barred from presenting those claims to the state court. Accordingly, to overcome his procedural default, Herrington must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

In order to show cause to excuse a procedural default, a petitioner must demonstrate that there was some objective factor external to the petitioner that impeded his ability to comply with the procedural rules. *Coleman*, 501 U.S. at 753. In attempting to explain why he did not exhaust

Grounds Eight and Nine in the state courts, Herrington acknowledges that, after receiving notice from the Ohio Supreme Court that his Memorandum in Support of Jurisdiction was late and that he had not attached the Ohio Court of Appeals' decision from which he was appealing, he noticed that "there was a typographical error on his part." Doc. 1, p. 26. Further, Herrington states "had it not been for Petitioner's typographical error, Ground Eight and Nine would have been submitted on time, and exhausted in the Ohio Supreme Court." Doc. 1, p. 27. The foregoing demonstrates that Herrington's untimely filing was related to his own error (Doc. 1, pp. 26-27) rather than some external factor and therefore, does not constitute sufficient cause to excuse his procedural default. Further, to the extent that Herrington attempts to excuse his procedural default on the basis that he is a layman or proceeding *pro se* (Doc. 1, p. 27, Doc. 16, pp. 54-55), his argument is unavailing. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (petitioner's *pro se* status before the Ohio Supreme Court was insufficient to demonstrate cause to excuse petitioner's procedural default). Since Herrington has not established sufficient cause, it is not necessary to address the prejudice prong. *See Smith v. Murray*, 477 U.S. 527, 533 (1986).

Additionally, Herrington has failed to demonstrate actual innocence so as to demonstrate that there would be a fundamental miscarriage of justice if his defaulted claims were not considered. *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) ("A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'") (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *see also Taylor v. Kelly*, 2014 WL 4436595(N.D. Ohio Sept. 9, 2014) ("Actual innocence means factual innocence, not merely legal insufficiency.") (internal citations omitted).

Based on the foregoing, the undersigned concludes that Herrington procedurally defaulted Grounds Eight and Nine and has failed to demonstrate cause to excuse his procedural default.  Additionally, he has failed to demonstrate that there will be a fundamental miscarriage of justice if his procedurally defaulted claims are not considered.  Accordingly, the undersigned recommends that the Court dismiss Herrington's federal habeas relief on Grounds Eight and Nine.

### IV.      Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DENY** the claims in Grounds One through Seven and **DISMISS** the claims in Grounds Eight and Nine.

Dated: March 26, 2015

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986)